# EXHIBIT A

# Commonwealth of Massachusetts

BRISTOL, ss.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2573CV00949

New England Property Services Group, LLC , PLAINTIFF(S)

v.

Certain Underwriters at Lloyd's, London , DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO Certain Underwriters at Lloyd's, London . (Defendant's name)

**You are being sued**. The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Bristol Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or Plaintiff, if unrepresented). You can do this by:
    a.  Filing or mailing your **signed original** Answer to the Clerk's Office for Civil Business, _____ Court, _____(address), by mail or in person, **AND**
    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _____.

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must sent to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons list under **Mass.R.Civ.P. 12.** If you are filing the Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at **www.mass.gov.courts/case-legal-res/rulesofcourt.**

# Commonwealth of Massachusetts

BRISTOL, ss.                                   TRIAL COURT OF THE COMMONWEALTH
                                               SUPERIOR COURT DEPARTMENT
                                               CIVIL DOCKET NO. 2573CV00949

New England Property Services Group, , PLAINTIFF(S)
                              LLC

v.

Certain Underwriters at Lloyd's, , DEFENDANT(S)
                    London

## SUMMONS

THIS SUMMONS IS DIRECTED TO Certain Underwriters at Lloyd's, London . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Bristol Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or Plaintiff, if unrepresented). You can do this by:
    a.  Filing or mailing your **signed original** Answer to the Clerk's Office for Civil Business, _____ Court, _____(address), by mail or in person, **AND**
    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _____.

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must sent to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons list under **Mass.R.Civ.P. 12.** If you are filing the Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at **www.mass.gov.courts/case-legal-res/rulesofcourt.**

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at **www.mass.gov/courts/selfhelp.**

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss.

Witness, Hon. Michael D. Ricciuti, Chief Justice on _____, 20____.

Jennifer A. Sullivan, Esquire
Clerk of Courts

**NOTE:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass.R.Civ.P. 4(d)(1-5)):

_____

_____

_____

Dated: _____, 20____    Signature: _____

N.B.    TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX – BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

#2

## COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.:

2573CV00949A

NEW ENGLAND PROPERTY :
SERVICES GROUP, LLC, :
                    Plaintiff, :

v.                              :

CERTAIN UNDERWRITERS AT :
LLOYD'S, LONDON,            :
            Defendant    :

**JURY TRIAL DEMANDED**

BRISTOL SUPERIOR COURT
· FILED

NOV 2 6 2025

JENNIFER A. SULLIVAN, ESQ
CLERK/MAGISTRATE

## COMPLAINT

## PARTIES

1. The Plaintiff, New England Property Services Group, LLC, ("NEPSG") is a Massachusetts Limited Liability Company with a usual place of business at 1822 North Main Street, Second Floor Annex Suite #001, Fall River, Massachusetts.

2. The Defendant, Certain Underwriters at Lloyd's, London ("LLOYD'S"), is a foreign corporation headquartered in London, England, and licensed to do business in the Commonwealth of Massachusetts, with a United States office at 25 West 53rd Street, New York, New York.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to M.G.L. c. 212 §3. The amount in controversy is in excess of the minimum jurisdictional limits of the Court. -

4. Venue is proper in this Court pursuant to M.G.L. c. 223 §1.

1

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## GENERAL ALLEGATIONS

5.  LLOYD'S issued insurance policy number W5146124PNYH ("Policy") to Christopher Rice ("Policyholder"), insuring the property located at 1 Masthead Lane, Dartmouth, Massachusetts ("Subject Premises"), for the policy period of February 10, 2024, to February 10, 2025. A copy of the Policy is attached as Exhibit 1.

6.  The Policy provides coverage for direct physical loss, including wind and storm-related damage.

7.  The Policy is a replacement-cost policy, requiring that damaged property be repaired or restored to its pre-loss condition with new items of like kind and quality.

8.  In *New England Property Services Group, LLC v. Bunker Hill Preferred Insurance Company*, C.A. No. 2022-84-02019 (Mass. Super. Apr. 22, 2024), Suffolk County Superior Court Associate Justice David Deakin ruled that a replacement cost policy includes matching coverage: "The court hereby declares and adjudges that the Policy provides matching coverage and that NEPSG is entitled, as the homeowner's assignee, to demand reference pursuant to the policy." A copy of the decision is attached as Exhibit 2.

9.  At all relevant times, the Policyholder complied with all Policy conditions, including the duties after loss.

10. At all relevant times, NEPSG complied with all Policy conditions, including the duties after loss.

11. On or about March 5, 2024, the Subject Premises sustained direct and sudden loss from wind and storm-related events.

12. At all relevant times, the Policy insured the Policyholder's financial interest in the Subject Premises.

2

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

13. On or about March 7, 2024 and April 8, 2024, Steven Ceceri ("Mr. Ceceri"), the sole owner and manager of NEPSG, inspected the Subject Premises and documented exterior damage, including roof and siding damage to several roof slopes with laminated and wood shingles, as well as interior water damage to the lower-level bathroom ceiling and wall, the kitchen, dining room, and other areas where physical damage was observed.

14. On or about April 17, 2024, the Policyholder and NEPSG executed a valid home restoration contract ("Contract") assigning to NEPSG all rights and benefits related to the post-loss claim and directing LLOYD'S to issue all claim payments directly to NEPSG.

15. Under the Contract, NEPSG became the legal claimant and equitable owner of the claim, with the right to receive payment and pursue legal action.

16. The Contract lists the date of loss as March 5, 2024.

17. On or about April 18, 2024, the claim was submitted to LLOYD'S and to the Policyholder's local insurance agent, Lantz Family Insurance Agency, Inc. ("Lantz"), for storm-related damage, attaching a copy of the Contract's direction to pay and the irrevocable assignment of insurance benefits and rights.

18. In its submission, NEPSG requested copies of all property inspection reports related to coverage; documentation of any prior claims filed under the Policy; a certified copy of the Policy; the assigned claim number; and the contact information for the assigned claim adjuster and supervisor.

19. On or about April 23, 2024, Lantz confirmed receipt of the claim submission and provided a copy of the Policy.

20. On or about April 25, 2024, NEPSG requested Lantz to provide definitions for several Policy terms and to confirm that the Policy covers damage caused by falling objects, ice, inadvertent

3

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

damage from protective measures, snow, the weight of ice and snow, wind, and windborne debris.

21. On or about April 29, 2024, Synergy Adjusting Corporation ("Synergy"), acting as agent for LLOYD'S, acknowledged receipt of the claim and the Contract.

22. On or about April 30, 2024, NEPSG requested from Synergy the same materials requested from Lantz: inspection reports, documentation of prior claims, a certified copy of the Policy, the claim number, and contact information for the adjuster and supervisor.

23. On or about the same date, Synergy provided a copy of the Policy and declaration pages and requested an inspection of the Subject Premises.

24. On or about May 1, 2024, Synergy acknowledged receipt of NEPSG's information request and stated that it was awaiting LLOYD'S review and response.

25. On or about May 2, 2024, NEPSG asked Synergy to provide dates and times for the inspection.

26. On or about May 9, 2024, NEPSG again requested Synergy to provide dates and times for the inspection.

27. On or about the same date, Synergy stated that LLOYD'S had retained Brandon Weiner of Engle Martin ("Mr. Weiner"), who would contact NEPSG to schedule the inspection.

28. NEPSG and Synergy exchanged emails, and on or about June 4, 2024, the parties agreed to conduct the inspection on June 12, 2024.

29. On or about June 12, 2024, Mr. Weiner; Brian Vanderhoff and Chad Brandon of J.S. Held; and Brian Olivieri of Rimkus Consulting Group, Inc. inspected the Subject Premises, with Mr. Ceceri present.

4

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

30. On or about July 15, 2024, Synergy sent NEPSG a letter requesting a substantial volume of documents. NEPSG asserts that many of the requested documents were irrelevant to investigating the claim or determining the amount of loss.

31. On or about January 30, 2025, the Policyholder retained Hathaway Construction of Dartmouth, Massachusetts, to inspect the interior damage and provide an estimated repair cost.

32. On or about February 14, 2025, LLOYD'S counsel, Elizabeth Reidy, Esq. ("Attorney Reidy"), informed NEPSG that LLOYD'S was reiterating its request to conduct an Examination Under Oath ("EUO") of Mr. Ceceri and the Policyholder.

33. On or about February 20, 2025, NEPSG responded to Attorney Reidy with available dates for the EUOs of both Mr. Ceceri and the Policyholder.

34. On or about February 26, 2025, NEPSG provided Synergy, on behalf of LLOYD'S, all requested documents.

35. On or about February 28, 2025, NEPSG and LLOYD'S agreed to schedule the Policyholder's EUO for March 28, 2025, and Mr. Ceceri's EUO for April 2, 2025.

36. On or about March 28, 2025, Attorney Reidy conducted the Policyholder's EUO at NEPSG's office.

37. On or about April 2, 2025, Attorney Reidy conducted Mr. Ceceri's EUO at NEPSG's office.

38. On or about April 14, 2025, Attorney Reidy emailed NEPSG a copy of the Policyholder's EUO transcript and errata sheet, allowing 30 days for return.

39. On or about April 16, 2025, Attorney Reidy emailed NEPSG a copy of Mr. Ceceri's EUO transcript and errata sheet, allowing 30 days for return.

40. On or about April 29, 2025, Attorney Reidy sent a letter to NEPSG's in-house counsel, Thomas J. Alves, Esq. ("Attorney Alves"), and Michael H. Brady, Esq. ("Attorney Brady"), with the

5

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

subject line "Reservation of Rights." NEPSG avers that the letter misstated the Policy's coverage period; incorrectly asserted that the Policyholder and Mr. Ceceri gave conflicting EUO testimony; and included eight additional document requests, seeking a detailed list of claimed damages; repair estimates; electrical work records; reports and photos from Hathaway Construction; quotes for repairs; communications between the Policyholder and/or NEPSG; and another request for the already-produced Contract. The response deadline was May 31, 2025.

41. On or about May 6, 2025, NEPSG sent Attorney Reidy the Policyholder's signed errata sheet.

42. On or about May 16, 2025, NEPSG sent Attorney Reidy Mr. Ceceri's signed errata sheet.

43. On or about May 16, 2025, Attorney Reidy emailed NEPSG requesting clarification regarding Mr. Ceceri's errata sheet, and NEPSG responded on or about May 19, 2025.

44. On May 21, 2025, Attorney Reidy emailed NEPSG, falsely alleging that Mr. Ceceri had substantively changed his EUO testimony and reserving LLOYD'S right to conduct a second EUO.

45. On or about May 23, 2025, Attorney Brady responded to Attorney Reidy, disputing LLOYD'S allegations regarding the errata changes, objecting to a second EUO, and confirming that NEPSG would provide the requested additional documents by May 31, 2025.

46. On or about June 3, 2025, Attorney Reidy responded to Attorney Brady, rejecting accusations of bad faith and defending the insurer's reservation of rights to conduct a second EUO.

47. On or about June 10, 2025, NEPSG sent LLOYD'S a demand letter under M.G.L. c. 93A ("93A Letter") asserting unfair and deceptive practices under M.G.L. c. 176D and c. 93A, including misrepresenting policy dates, failing to promptly investigate and settle the claim, making

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

unreasonable demands for a second EUO, and baselessly alleging fraud or collusion against NEPSG.

48. On or about July 3, 2025, LLOYD'S responded to the 93A Letter, rejecting the demand and refusing to tender a reasonable settlement offer.

49. LLOYD'S response incorrectly asserted that the post-loss assignment under the Contract was invalid without its consent; that NEPSG lacked standing under M.G.L. c. 93A § 9; that NEPSG failed to state a damages claim; that the demand letter was improperly served; and that NEPSG failed to cooperate with the investigation, despite providing full access to the Subject Premises, producing voluminous records, and sitting for an EUO.

50. NEPSG replied, asserting that the post-loss assignment is valid under long-standing Massachusetts law, therefore NEPSG has standing; that service of the 93A Letter was proper; and that the letter adequately stated damages.

51. To date, LLOYD'S has failed to negotiate settlement or tender a reasonable settlement offer sufficient to restore the Subject Premises to its pre-loss condition, in violation of M.G.L. c. 176D § 3(9) and its duty of good faith and fair dealing.

## COUNT I
### Violation of M.G.L. c. 93A and M.G.L. 176D

52. Plaintiff NEPSG realleges and incorporates by reference all allegations in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. At all relevant times, LLOYD'S was engaged in trade or commerce within the meaning of M.G.L. c. 93A § 1.

54. LLOYD'S violated M.G.L. c. 93A §§ 2 and 9, and M.G.L. c. 176D, § 3(9), by engaging in unfair and deceptive acts and practices in the handling of the Claim, including but not limited to: Failure to conduct a thorough and competent investigation based upon all available

7

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

information, in violation of M.G.L. c. § 3(9)(d); Failure to promptly, fairly, and equitably settle the claim in which liability had become reasonably clear, in violation of M.G.L. c. § 3(9)(f); Compelling NEPSG to initiate litigation to recover amounts due under the Policy, in violation of M.G.L. c. 176D § 3(9)(g).

55. Defendant LLOYD'S conduct during the settlement of the Claim constitutes a violation of its duty of good faith and fair dealing and its statutory obligation to fairly investigate and promptly settle the Claim, thereby causing and perpetuating an unreasonable delay in settlement of the Claim.

56. The acts of LLOYD'S as described herein constitute unfair or deceptive acts or practices within the meaning of M.G.L. c. 93A, §§ 2 and 9 and M.G.L. c. 176D §§ 3(9) (d), (f), and (g) and these unfair or deceptive acts or practices were willfully and knowingly committed.

57. As a result of the above described unfair or deceptive acts or practices, NEPSG sustained injury and damages, including but not limited to, being denied payment of funds to which NEPSG was entitled and interest thereon, not receiving compensation for LLOYD'S's use of NEPSG's money, and not being compensated for the true replacement cost of the damaged roof, siding and interior of the Subject Premises.

58. The refusal to timely settle the Claim was a calculated and willful decision made in bad faith with knowledge or reason to know that the acts committed by LLOYD'S violated M.G.L. c. 93A.

59. As a result of LLOYD'S unfair or deceptive acts or practices, NEPSG has suffered damages.

8

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## DEMAND FOR JUDGEMENT

Wherefore, Plaintiff New England Property Services Group, LLC, on Count I of the Complaint, respectfully requests that this Honorable Court:

- Enter judgement for NEPSG against LLOYD'S;

- Award damages to NEPSG in an amount to be determined at trial;

- Treble such damages under M.G.L. c. 93A § 9;

- Award pre- and post-judgement interest, costs, and reasonable attorney's fees to NEPSG and

- Grant such relief as this Court deems just and equitable.

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS SO TRIABLE

New England Property Services Group, LLC
By its attorneys,

/s/ Michael H. Brady
Michael H. Brady BBO #64378
New England Property Services Group, LLC
1822 North Main Street
Second Floor Annex, Suite 001
Fall River, MA 02720
(508) 567-5738 – Phone
(508) 205-9109 – Fax
michael@newenglandpropertyservicesgroup.com

9

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

# EXHIBIT 1

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

29 April 2024

Our ref:  W5146124PNYH
Your ref:  W5146124PNYH

## Re:  Certified Copy of Policy for Christopher Rice

Beazley Group

30 Batterson Park Road
Farmington, CT 06032
USA

Phone (560) 677 3700
Fax   (860) 679 0247

info@beazley.com
www.beazley.com

This is to certify that, to the best of the undersigned's knowledge, the attached is a complete and accurate representation of the insurance policy number W5146124PNYH (effective 10-Feb-2024 to 10-Feb-2025) issued by certain Underwriters at Lloyd's, London to Christopher Rice and sent to the broker of record.

The documents and/or information produced herewith are kept maintained in the orderly course of business of Beazley USA Services, Inc.

*Katie Lamothe*

Authorized Representative of Beazley USA Services, Inc.

Katie Lamothe – Underwriter – Property Division
T: 1-770-351-1687
E: Katie.Lamothe@Beazley.com



Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**beazley**

Homeowner Policy (HO-5)

## RENEWAL DECLARATION PAGES

**POLICY/CERTIFICATE NUMBER: W5146124PNYH** renewal of W5146123PNYH
ISSUED OFF AUTHORITY NUMBER:  B6012BUSANMBA2401

1. **Name of Insured and Mailing Address:**
   Christopher Rice
   1 Masthead Lane
   DARTMOUTH MA 02748

2. **Your Producer or Broker is:**
   Sheryl Marciano
   Lantz Family Insurance Agency, Inc.
   352 Faunce Corner Rd
   Dartmouth, MA 02747

3. Policy Period:          From: 02/10/2024
                           To:    02/10/2025
                           Both days at 12:01 a.m. Standard Time at insured location

4. Perils Insured: As defined in attached forms

5. The Property or Interest: Dwelling (House).

6. The Property or Interest is located at:          1 Masthead Lane
                                                    DARTMOUTH MA 02748

7. **Premium:**
   HOMEOWNERS (HO5) PREMIUM                                          $15,088.00
   EQUIPMENT BREAKDOWN COVERAGE PREMIUM                                  $148.00

8. **Sum Insured: $3,744,000 per occurrence**

   Sub-limits (part of and not in addition to the aggregate sum insured):

   **SECTION I PROPERTY COVERAGE:**

   | Coverage A | **Dwelling** | $2,544,000 | per occurrence |
   |---|---|---|---|
   | Coverage B | **Other Structures** | $250,000 | per occurrence |
   | Coverage C | **Contents** | $700,000 | per occurrence |
   | Coverage D | **Loss Of Use** | $250,000 | per occurrence |

   **SECTION II LIABILITY COVERAGE:**                          **EQUIPMENT BREAKDOWN**

   | Coverage E | **Personal Liability** | $500,000 | per occurrence | Coverage Limit | $50,000 per occurrence |
   |---|---|---|---|---|---|
   | Coverage F | **Medical Payments** | $5,000 | per occurrence | | |

9. **Deductible:**

   ### SECTION I
   Equipment Breakdown Deductible $500 per occurrence
   All Other Perils $10,000 per occurrence
   Windstorm and Hail Deductible 5% ($127,200) per occurrence
   Earthquake Deductible EXCLUDED per occurrence

   In case of loss under Section I, we cover only that part of the loss over the deductible stated

BSLHO 00 04 10 04

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

beazley

Homeowner Policy (HO-5)

**10. Cancellation period:** 60 days notice of cancellation, but 10 days for non-payment of premium

**Forms included and Endorsements attaching at inception:**
- Lloyd's Certificate (NMA2868-01-24)
- Schedule of Policy Endorsements (BSLHO00030805)
- Homeowners 5 - Comprehensive Form (HO00050511)
- Golf Cart Coverage (BSLHO00301004)
- Limited Fungi, Wet or Dry Rot, or Bacteria Coverage (HO04270511)
- Ordinance or Law Coverage (HO05620401)
- Homeowners Standard Exclusions and Privacy Statement (BSLHO00321212)
- Windstorm or Hail Percentage Deductible (BSLHO03170113)
- Identity Fraud Expense Coverage (HO04550303)
- Functional Replacement Cost Loss Settlement (BSLHO05301219)
- Personal Injury (HO24820402)
- Water or Steam (Including Following Freezing) Aggregate Endorsement (BSLHO04920222)
- Replacement Cost Settlement Coverage C - Personal Property (BSLHO00710313)
- Supplemental Loss Assessment Coverage (HO04470121)
- Equipment Breakdown Endorsement (BSLHO05000515)
- Existing Damage Endorsement (BSLHO00480808)
- Water Back-Up and Sump Discharge or Overflow (HO23200715)
- Total or Constructive Loss Clause (BSLHO13480120)
- Communicable Disease Endorsement (LMA5393)
- Minimum Earned Premium Clause (BSLHO00040805)
- Inflation Guard (HO04461000)
- Home Owners Standard Exclusions (ltd fungi) Debris Removal End & Privacy (BSLHO00330921)

**Signed for the Correspondent:**
Richard Montminy

Authorized Representative

**Dated:** February 16, 2024

**Information:**

**Surplus Lines Agent:**        Risk Placement Services
                                 Risk Placement Services
                                 4 Technology Drive, Suite 105
                                 WESTBOROUGH, MA 01581
**Surplus Lines License No.:**  2101845

**To file a claim please call:**   (800) 994-9719        or email at Central@synergyadjusting.com

**For all other queries:**      **Beazley USA Services, Inc.**
                                 **Property Group**
                                 **6 Concourse Pkwy NE, Ste. 2800**
                                 **Atlanta, GA 30328**

BSLHO 00 04 10 04

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number



**This Insurance** is effected with certain Underwriters at Lloyd's, London.

**This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

**The Assured** is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

> Beazley USA Services Inc.
> 6 Concourse Pkwy
> Atlanta, GA 30328
> USA

SLC-3 (USA) NMA2868 (amended)

SLC-3 (USA) NMA2868 (amended)

## CERTIFICATE PROVISIONS

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Pages.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon Lloyd's America, Inc. Attention: Legal Department, 280 Park Avenue, East Tower, 25th Floor, New York NY 10017, U.S.A., and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

7. **It is noted** and agreed that wherever the word "Policy" appears herein it shall be deemed to read "Certificate".

8. **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

SLC-3 (USA) NMA2868 (amended)

2

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## Short rate Cancellation Table for Term of One Year

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 25% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 25 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 25 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 25 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 25 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 25 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 25 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 25 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 25 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 25 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 25 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 25 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 25 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 25 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 25 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 25 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 25 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 25 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 25 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 25 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A.  If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.  If insurance has been in force for more than one year:

1.  Determine full annual premium as for insurance written for a term of one year.

2.  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

3.  Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

9.  **Cancellation.** Notwithstanding any cancellation provisions within this Certificate, it is hereby noted and agreed that should a minimum earned premium percentage be shown in the declarations of this Certificate, then the Underwriters shall retain as a minimum such percentage of premium stated.

10.  **Complaints Procedure** If you have a complaint with any aspect of your policy with Lloyd's Underwriters: You may contact the broker/agent who arranged your policy for you. Should you be dissatisfied with the outcome of your broker's resolution, please submit your written complaint to:
> Beazley USA Services Inc.
> 6 Concourse Pkwy
> Atlanta, GA 30328
> USA

SLC-3 (USA) NMA2868 (amended)

**11. Law and Jurisdiction.** This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit clause contained herein.

**12. Conformity to Statute.** Any terms of this Certificate which may conflict with applicable statutes (or statutes deemed applicable by a court of competent jurisdiction) are amended to conform to the minimum requirements of such statutes.

**13. Conformity.** It is hereby noted and agreed that wherever the words "Assured" and "Insured" appear in this Certificate they shall be deemed to be synonymous.

It is hereby noted and agreed that wherever the words "Underwriters", "Insurers", and "Company" appear in this Certificate they shall be deemed to be synonymous.

It is hereby noted and agreed that wherever the term "we", "us", and "our" appears herein, same shall be deemed to read "Insurers".

It is hereby noted and agreed that wherever the term "you" or "your" appears herein, same shall be deemed to read "the Insured".

**14. Insurance** is effective with certain **UNDERWRITERS AT LLOYD'S, LONDON** percentage: 100%

**LLOYDS SECURITY SCHEDULE:** Syndicate 3623   100%

**This contract is subject to US state surplus lines requirements. It is the responsibility of the surplus lines broker to affix a surplus lines notice to the contract document before it is provided to the insured. In the event that the surplus lines notice is not affixed to the contract document the insured should contact the surplus lines broker.**

SLC-3 (USA) NMA2868 (amended)

4

Date Filed 11/26/2025 3:48 PM
Superior Court – Bristol
Docket Number



One Lime Street London EC3M 7HA

SLC-3 (USA) NMA2868 (amended)

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

BSLHO00030805

# Schedule of Certificate Endorsements

**Certificate Number: W5146124PNYH**          **Effective Date: 2024-02-10 00:00:00.0**

Listed below are the endorsements and policy forms that form part of this certificate.

Wherever the term "Company" appears in these forms the same shall be deemed to mean "Underwriters". These Underwriters are listed in the Lloyd's Security Participation Schedule.

Wherever the term "Policy" appears in these forms the same shall be deemed to mean "Certificate"

| Form No. | Form Name |
|---|---|
| NMA2868-01-24 | Lloyd's Certificate |
| BSLHO00030805 | Schedule of Policy Endorsements |
| HO00050511 | Homeowners 5 - Comprehensive Form |
| BSLHO00301004 | Golf Cart Coverage |
| HO04270511 | Limited Fungi, Wet or Dry Rot, or Bacteria Coverage |
| HO05620401 | Ordinance or Law Coverage |
| BSLHO00321212 | Homeowners Standard Exclusions and Privacy Statement |
| BSLHO03170113 | Windstorm or Hail Percentage Deductible |
| HO04550303 | Identity Fraud Expense Coverage |
| BSLHO05301219 | Functional Replacement Cost Loss Settlement |
| HO24820402 | Personal Injury |
| BSLHO04920222 | Water or Steam (Including Following Freezing) Aggregate Endorsement |
| BSLHO00710313 | Replacement Cost Settlement Coverage C - Personal Property |
| HO04470121 | Supplemental Loss Assessment Coverage |
| BSLHO05000515 | Equipment Breakdown Endorsement |
| BSLHO00480808 | Existing Damage Endorsement |
| HO23200715 | Water Back-Up and Sump Discharge or Overflow |
| BSLHO13480120 | Total or Constructive Loss Clause |
| LMA5393 | Communicable Disease Endorsement |
| BSLHO00040805 | Minimum Earned Premium Clause |
| HO04461000 | Inflation Guard |
| BSLHO00330921 | Home Owners Standard Exclusions (ltd fungi) Debris Removal End & Privacy |

6

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

# HOMEOWNERS 5 – COMPREHENSIVE FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

   **a.** Liability for "bodily injury" or "property damage" arising out of the:

   **(1)** Ownership of such vehicle or craft by an "insured";

   **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

   **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

   **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   **b.** For the purpose of this definition:

   **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

   **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

   **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

   **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

   **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   **b.** Any other activity engaged in for money or other compensation, except the following:

   **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

   **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   **(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

   **a.** You and residents of your household who are:

   **(1)** Your relatives; or

   **(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

   **b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

   **(1)** 24 and your relative; or

   **(2)** 21 and in your care or the care of a resident of your household who is your relative; or

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

c. Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person described in **5.a.** or **b.**; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in **a.** and **b.** above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one-family dwelling where you reside;

b. The two-, three- or four-family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

© Insurance Services Office, Inc., 2010

HO 00 05 05 11

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

### 2. Limit For Property At Other Locations

a. **Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   (1) Moved from the "residence premises" because it is:

       (a) Being repaired, renovated or rebuilt; and

       (b) Not fit to live in or store property in; or

   (2) In a newly acquired principal residence for 30 days from the time you begin to move the property there.

b. **Self-storage Facilities**

   Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   (1) Moved from the "residence premises" because it is:

       (a) Being repaired, renovated or rebuilt; and

       (b) Not fit to live in or store property in; or

   (2) Usually located in an "insured's" residence, other than the "residence premises".

### 3. Special Limits Of Liability

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft, misplacing or losing of firearms and related equipment.

g. $2,500 for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

(1) Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

(2) In or upon a "motor vehicle".

j. $1,500 on portable electronic equipment that:

(1) Reproduces, receives or transmits audio, visual or data signals;

(2) Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

(3) Is in or upon a "motor vehicle".

k. $250 on antennas, tapes, wires, records, disks or other media that are:

(1) Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

(2) In or upon a "motor vehicle".

4. **Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

This includes a "motor vehicle's" equipment and parts.

However, this Paragraph **4.c.** does not apply to:

(1) Portable electronic equipment that:

(a) Reproduces, receives or transmits audio, visual or data signals; and

(b) Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

(2) "Motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service a residence; or

(b) Designed to assist the handicapped;

d. Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided under **E.10. Landlord's Furnishings** under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

© Insurance Services Office, Inc., 2010

HO 00 05 05 11

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

### D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

#### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

#### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

#### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

#### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

### E. Additional Coverages

#### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's trees felled by a Peril Insured Against;

provided the trees:

(3) Damage a covered structure; or

(4) Do not damage a covered structure, but:

(a) Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

#### 2. Reasonable Repairs

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

© Insurance Services Office, Inc., 2010

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

   **(1)** Increase the limit of liability that applies to the covered property; or

   **(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section I – Conditions.

### 3. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the "residence premises"; for loss caused by the following Perils Insured Against:

   **a.** Fire or Lightning;

   **b.** Explosion;

   **c.** Riot or Civil Commotion;

   **d.** Aircraft;

   **e.** Vehicles not owned or operated by a resident of the "residence premises";

   **f.** Vandalism or Malicious Mischief; or

   **g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

### 4. Fire Department Service Charge

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

### 5. Property Removed

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

### 6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money

   **a.** We will pay up to $500 for:

   **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

   All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

   This coverage is additional insurance. No deductible applies to this coverage.

   **b.** We do not cover:

   **(1)** Use of a credit card, electronic fund transfer card or access device:

      **(a)** By a resident of your household;

      **(b)** By a person who has been entrusted with either type of card or access device; or

      **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

   **(2)** Loss arising out of "business" use or dishonesty of an "insured".

   **c.** If the coverage in **a.** above applies, the following defense provisions also apply:

   **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

### 7. Loss Assessment

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against, other than:

   (1) Earthquake; or

   (2) Land shock waves or tremors before, during or after a volcanic eruption.

   The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph **Q.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

### 8. Collapse

This Additional Coverage applies to property covered under Coverages **A** and **B**.

a. The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

b. For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

c. This Additional Coverage – Collapse does not apply to:

   (1) A building or any part of a building that is in danger of falling down or caving in;

(2) A part of a building that is standing, even if it has separated from another part of the building; or

(3) A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

d. We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

   (1) The Perils Insured Against under Coverages **A** and **B**;

   (2) Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

   (3) Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

   (4) Weight of contents, equipment, animals or people;

   (5) Weight of rain which collects on a roof; or

   (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

e. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

f. This coverage does not increase the limit of liability that applies to the damaged covered property.

### 9. Glass Or Safety Glazing Material

a. We cover:

   (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

   (2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused only by the following Perils Insured Against:

**a. Fire Or Lightning**

**b. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**c. Explosion**

**d. Riot Or Civil Commotion**

**e. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**f. Vehicles**

**g. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**h. Vandalism Or Malicious Mischief**

**i. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**j. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**k. Accidental Discharge Or Overflow Of Water Or Steam**

**(1)** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

**(2)** This peril does not include loss:

**(a)** To the system or appliance from which the water or steam escaped;

**(b)** Caused by or resulting from freezing except as provided in **m.** Freezing below;

**(c)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

**(d)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**(3)** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

© Insurance Services Office, Inc., 2010

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**l. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**m. Freezing**

(1) This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

(a) Maintain heat in the building; or

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

(2) In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**n. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**o. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against.

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

We insure against direct physical loss to property described in Coverages **A**, **B** and **C**.

We do not insure, however, for loss:

**A.** Under Coverages **A**, **B** and **C**:

1. Excluded under Section I – Exclusions;

2. Caused by:

   **a.** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

   **(1)** Maintain heat in the building; or

   **(2)** Shut off the water supply and drain all systems and appliances of water.

   However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

   **b.** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   **(1)** Fence, pavement, patio or swimming pool;

   **(2)** Footing, foundation, bulkhead, wall, or any other structure or device, that supports all or part of a building or other structure;

   **(3)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

   **(4)** Pier, wharf or dock;

**c.** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**d.** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(1)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(2)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**e.** Any of the following:

**(1)** Wear and tear, marring, deterioration;

**(2)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(3)** Smog, rust or other corrosion, or dry rot;

**(4)** Smoke from agricultural smudging or industrial operations;

**(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against in **a.** through **o.** as listed in **E.10.** Landlord's Furnishings under Section I – Property Coverages.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(6)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(7)** Birds, rodents or insects;

© Insurance Services Office, Inc., 2010

HO 00 05 05 11

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**(8)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(9)** Animals owned or kept by an "insured".

**Exception To 2.e.**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A**, **B** or **C** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section I – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **d.** and **e.** above.

Under **2.a.** through **e.** above, any ensuing loss to property described in Coverages **A**, **B** and **C** not precluded by any other provision in this policy is covered.

**B.** Under Coverages **A** and **B:**

1. Caused by vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**2.** Involving collapse, including any of the following conditions of property or any part of the property:

**a.** An abrupt falling down or caving in;

**b.** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**c.** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **a.** or **b.** above;

other than as provided in **E.8.** Collapse under Section I – Property Coverages. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**C.** Under Coverage **C** caused by:

1. Breakage of eyeglasses, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles other than jewelry, watches bronzes, cameras and photographic lenses.

However, there is coverage for breakage of the property by or resulting from:

**a.** Fire, lightning, windstorm, hail;

**b.** Smoke, other than smoke from agricultural smudging or industrial operations;

**c.** Explosion, riot, civil commotion;

**d.** Aircraft, vehicles, vandalism and malicious mischief;

**e.** Collapse of a building or any part of a building;

**f.** Water not otherwise excluded;

**g.** Theft or attempted theft; or

**h.** Sudden and accidental tearing apart, cracking, burning or bulging of:

**(1)** A steam or hot water heating system;

**(2)** An air conditioning or automatic fire protective sprinkler system; or

**(3)** An appliance for heating water;

**2.** Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

**3.** Refinishing, renovating or repairing property other than watches, jewelry and furs;

**4.** Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard engines or motors; or

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**5.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss to property described in Coverage **C** not precluded by any other provision in this policy is covered.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

### 1. Ordinance Or Law

Ordinance Or Law means any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

### 2. Earth Movement

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting.

This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.d.,** is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.d.,** is covered.

### 3. Water

This means:

**a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.** Water which:

**(1)** Backs up through sewers or drains; or

**(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

This exclusion does not apply to property described in Coverage **C** that is away from a premises or location owned, rented, occupied or controlled by an "insured".

This exclusion applies to property described in Coverage **C** that is on a premises or location owned, rented, occupied or controlled by an "insured" even if weather conditions contribute in any way to produce the loss.

### 4. Power Failure

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## 5. Neglect

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

## 6. War

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

## 7. Nuclear Hazard

This Exclusion A.7. pertains to Nuclear Hazard to the extent set forth in N. Nuclear Hazard Clause under Section I – Conditions.

## 8. Intentional Loss

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

## 9. Governmental Action

Governmental Action means the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

## SECTION I – CONDITIONS

## A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

## B. Deductible

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

1. Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

2. If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

## C. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

a. Make reasonable and necessary repairs to protect the property; and

b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in 6. above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

## D. Loss Settlement

In this Condition D., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

      If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

   b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

      (1) The actual cash value of that part of the building damaged; or

      (2) That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

   c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

      (1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

© Insurance Services Office, Inc., 2010

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D. Loss Settlement,** provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

### E. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

### F. Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

### G. Other Insurance And Service Agreement

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

### H. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

### I. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

### J. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

### K. Abandonment Of Property

We need not accept any property abandoned by an "insured".

### L. Mortgage Clause

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F. Appraisal**, **H. Suit Against Us** and **J. Loss Payment** under Section **I – Conditions** also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

### M. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

### N. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

### O. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

### P. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

### Q. Policy Period

This policy applies only to loss which occurs during the policy period.

### R. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

### S. Loss Payable Clause

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

## A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service a residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place:

         (a) On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.**; or

         (b) Off an "insured location" and the "motor vehicle" is:

            (i) Designed as a toy vehicle for use by children under seven years of age;

            (ii) Powered by one or more batteries; and

            (iii) Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

   e. A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

         (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

         (c) Cross public roads at designated points to access other parts of the golfing facility; or

      (2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**B. "Watercraft Liability"**

1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

   c. Is not a sailing vessel and is powered by:

      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

         (a) 50 horsepower or less and not owned by an "insured"; or

         (b) More than 50 horsepower and not owned by or rented to an "insured"; or

      (2) One or more outboard engines or motors with:

         (a) 25 total horsepower or less;

         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

         (d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

            (i) You declare them at policy inception; or

            (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity or property than initially expected or intended.

   However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion **E.2.** does not apply to:

      (1) The rental or holding for rental of an "insured location";

         (a) On an occasional basis if used only as a residence;

         (b) In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

         (c) In part, as an office, school, studio or private garage; and

© Insurance Services Office, Inc., 2010    HO 00 05 05 11

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

### 3. Professional Services

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

### 4. "Insured's" Premises Not An "Insured Location"

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

### 5. War

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

### 6. Communicable Disease

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

### 7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

### 8. Controlled Substance

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

## F. Coverage E – Personal Liability

Coverage **E** does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section II – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definition 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

a. Repay; or

b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

## G. Coverage F – Medical Payments To Others

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

a. Occurs off the "insured location"; and

b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

3. From any:

a. Nuclear reaction;

b. Nuclear radiation; or

c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

a. To the extent of any amount recoverable under Section I;

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

(1) A "business" engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This Exclusion e.(3) does not apply to a "motor vehicle" that:

(a) Is designed for recreational use off public roads;

(b) Is not owned by an "insured"; and

(c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F Limit Of Liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to C. Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

    © Insurance Services Office, Inc., 2010

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## D. Duties Of An Injured Person – Coverage F – Medical Payments To Others

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

## E. Payment Of Claim – Coverage F – Medical Payments To Others

Payment under this coverage is not an admission of liability by an "insured" or us.

## F. Suit Against Us

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

## G. Bankruptcy Of An "Insured"

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

## H. Other Insurance

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## I. Policy Period

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

## J. Concealment Or Fraud

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## SECTIONS I AND II – CONDITIONS

### A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

### B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

### C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

---

**Page 22 of 23**        © Insurance Services Office, Inc., 2010        HO 00 05 05 11

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

### D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

### E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

### F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

### G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

**a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

**b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

BSLHO00301004

## BEAZLEY USA SERVICES, INC.
## HOMEOWNERS PROGRAM
GOLF CART COVERAGE

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

We cover the golf carts, motorized chairs and other similar motorized vehicle(s), accessories and equipment described below.

The coverage afforded by this extension is subject to the DEFINITIONS, CONDITIONS and EXCLUSIONS, including Your Duties After Loss, of this policy and all provisions of this endorsement. Section 1, C. Coverage C – Personal Property, 4.Property Not Covered, exceptions c.(2) is amended by the addition of:

( c) golf carts, motorized chairs and other similar motorized vehicle(s), accessories and equipment described below.

### DESCRIPTION OF VEHICLE
**Make/Model**                              **Serial Number**

### SECTION I – PROPERTY COVERAGES
### LOSS DEDUCTIBLE
Each claim for loss shall be adjusted separately in accordance with the Loss Settlement condition below.  A deductible of $250 will be subtracted from each adjusted loss.  No other deductible applies to this coverage.

### PERILS INSURED AGAINST

We cover direct physical loss to the property described above by any peril subject to the following exclusions.

### EXCLUSIONS

1. We do not cover any motorized vehicle that is:
   a. capable of attaining a maximum speed of more than 15 miles per hour; or
   b. subject to motor vehicle registration.
2. We do not cover any motorized vehicle while:
   a. being operated on a public road unless within the confines of a residential park, planned community or similar limited access living community where the insured resides;
   b. used to carry persons for a charge;
   c. used for "business" purposes, either legal or illegal;
   d. rented to others; or
   e. being used in any pre-arranged or organized race, jumping, speed, demolition or other contest, or in any practice or preparation for these contests or activities.

30

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

3. We do not cover loss caused by:

a. wear and tear, marring, scratching, denting or deterioration;

b. electrical or mechanical breakdown, latent defect or faulty manufacture;

c. damage limited only to the tires or wheels, unless the damage is caused by fire or if the tires or wheels are stolen;

d. wetness or dampness of atmosphere, freezing, overheating, rust or corrosion;

e. refinishing, repairing or servicing, unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss;

f. infidelity of your employees or persons to whom you entrust the insured property;

g. war, directly or indirectly;

h. nuclear hazard, either directly or indirectly. Loss caused by nuclear hazard will not be considered loss by fire, explosion or smoke, whether these perils are specifically named or otherwise included in the Covered Perils section. We will, however, cover direct loss by fire resulting from nuclear hazard; or

i. by an "insured" or at the direction of the "insured" with the intent to cause a loss.

4. We do not cover loss to the insured motorized vehicle, its parts and equipment, caused only by impact of its wheels with any road or ground.

5. We do not cover loss to any device designed for communication or for recording or reproducing sound unless the device is permanently installed in the insured golf cart, motorized chair or other similar motorized vehicle. We do not cover any tapes, discs or similar item used with any such devices

6. We do not cover loss to any device or instrument designed as a citizens band radio, two-way mobile radio or telephone, telephone or any of their accessories.

**Loss Settlement**

We will pay the actual cost to repair or replace the covered property in an amount not to exceed a maximum amount of $5,000, less deduction for depreciation.
Replacement Cost, if applicable under this policy, does not extend to this loss settlement provision.

**SECTION II – LIABILITY COVERAGES**

The insurance provided under Section II of this policy, Coverage E – Personal Liability and Coverage F – Medical Payments to Others, is amended to apply to "bodily injury" and "property damage" arising out of the ownership, maintenance or use of the described vehicle while it is off an "insured location" but within the confines of a residential park, planned community or similar limited access living community that contains the "insured location".

With respect to this coverage, the definition of "insured" includes any person or organization legally responsible for the described vehicle owned by the "insured". "Insured" does not include any person or organization using or having possession of the described vehicle without the owner's consent.

**EXCLUSIONS**

1. We do not cover "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any motorized vehicle that is:

a. capable of attaining a maximum speed of more than 15 miles per hour; or

b. subject to motor vehicle registration.

31

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

2. We do not cover "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any motorized vehicle while:

a. being operated on a public road unless within the confines of a residential park, planned community or similar limited access living community where the insured resides;

b. used to carry persons for a charge;

c. used for "business" purposes, either legal or illegal;

d. rented to others; or

e. being used in any pre-arranged or organized race, jumping, speed, demolition or other contest or in any practice or preparation for these contests or activities.

## SUBSTITUTION OF MOTORIZED VEHICLE

If any described vehicle is withdrawn from normal use due to sale, breakdown, repair, loss or destruction, the amount of insurance that applies to such vehicle will apply to any similar replacement vehicle operated by you. You must report the change to us within thirty (30) days from the date of substitution and pay any additional premium.

All other terms, conditions and exclusions of the policy remain unchanged.

**BSLHO00301004**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

POLICY NUMBER: **W5146124PNYH**

HOMEOWNERS
HO 04 27 05 11

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

### SCHEDULE

These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule.

| | |
|---|---|
| 1. Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | $5,000 |
| 2. Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria | $5,000 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**DEFINITIONS**

The following definition is added:

**"Fungi"**

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

b. Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I – PROPERTY COVERAGES**

**E. Additional Coverages**

Paragraph **10.k.(2)(d)** is deleted in Form **HO 00 05** only.

The following Additional Coverage is added:

**13. "Fungi", Wet Or Dry Rot, Or Bacteria**

a. The amount shown in the Schedule above is the most we will pay for:

(1) The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

(2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

b. The coverage described in 13.a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

(1) Number of locations insured under this endorsement; or

(2) Number of claims made.

d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

HO 04 27 05 11    © Insurance Services Office, Inc., 2010    **Page 1 of 3**

33

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

In Form **HO 00 03**:

### A. Coverage A – Dwelling And Coverage B – Other Structures

Paragraph **2.c.(5)** is replaced by the following:

(5) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is replaced by the following:
(c) Smog, rust or other corrosion;

### B. Coverage C – Personal Property

### 12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph **b.(4)** is replaced by the following:

(4) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 05**:

### A. Under Coverages A, B and C:
Paragraph **2.d.** is replaced by the following:

d. Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is replaced by the following:
(3) Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

Exclusion **A.10.** is added:

### 10. "Fungi", Wet Or Dry Rot, Or Bacteria

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

a. When "fungi", wet or dry rot, or bacteria results from fire or lightning; or
b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I – CONDITIONS

Condition **Q. Policy Period** is replaced by the following:

### Q. Policy Period

This policy applies to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition **A. Limit Of Liability** is replaced by the following:

### A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F Limit Of Liability shown in the Declarations.

**Page 2 of 3**          © Insurance Services Office, Inc., 2010          **HO 04 27 05 11**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

1. Number of locations insured under the policy to which this endorsement is attached;

2. Number of persons injured;

3. Number of persons whose property is damaged;

4. Number of "insureds"; or

5. Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in Condition A. Limit Of Liability of this endorsement, Condition B. Severability Of Insurance is replaced by the following:

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II – Conditions, A. Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

HO 04 27 05 11                    © Insurance Services Office, Inc., 2010                    **Page 3 of 3**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**HOMEOWNERS**
**HO 05 62 04 01**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ORDINANCE OR LAW COVERAGE

### SCHEDULE *

| |
|---|
| **Ordinance Or Law Percentage Amount: 25%** |

*Entry may be left blank if shown elsewhere in this policy for this coverage.

**A.** We will pay for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

  **1.** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

  **2.** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

  **3.** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**B.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in Paragraph **A.**, above.

**C.** Our limit of liability for this coverage will not be more than the amount determined in Paragraph **D.**, below.

**D.** The ordinance or law limit of liability is determined by multiplying:

  **1.** For Forms **HO 00 02, HO 00 03, HO 00 05** and **HO 00 06,** the Coverage **A** – Dwelling Limit of Liability shown in the Declarations by the Ordinance Or Law Percentage Amount shown in this endorsement; or

  **2.** For Form **HO 00 04,** the Building Additions And Alterations Limit of Liability shown in the Declarations by the Ordinance Or Law Percentage Amount shown in this endorsement.

**E.** We do not cover:

  **1.** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

  **2.** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

All other provisions of this policy apply.

HO 05 62 04 01          Copyright, Insurance Services Office, Inc., 2000          Page 1 of 1

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

BSLHO00321212

**BEAZLEY USA SERVICES, INC.**
**HOMEOWNERS PROGRAM**
**HOMEOWNERS STANDARD EXCLUSIONS AND PRIVACY STATEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Incorporating:
1) WAR AND TERRORISM EXCLUSION ENDORSEMENT (NMA2918)
2) LAND, WATER AND AIR EXCLUSION ENDORSEMENT
3) SEEPAGE &/OR POLLUTION AND/OR CONTAMINATION EXCLUSION ENDORSEMENT
4) DEBRIS REMOVAL ENDORSEMENT
5) PROPERTY CYBER AND DATA EXCLUSION (LMA5401)
6) ELECTRONIC DATE RECOGNITION EXCLUSION (LISTED PERILS) (NMA2808)
7) BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION (NMA2962)
8) ASBESTOS EXCLUSION
9) LEAD EXCLUSION
10) EXTERIOR INSULATION and FINISH SYSTEMS (EIFS) EXCLUSION
11) LIABILITY EXCLUSIONS
12) LLOYD'S PRIVACY POLICY STATEMENT (LSW1135B)

**1) WAR AND TERRORISM EXCLUSION ENDORSEMENT**

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

    1) war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

    2) any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

Page 1 of 8

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**NMA2918** Form approved by Lloyd's Underwriters' Non-Marine Association

## 2) LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

## 3) SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

a) any loss, damage, cost or expense, or

b) any increase in insured loss, damage, cost or expense, or

c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority; or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term 'any kind of seepage or any kind of pollution and/or contamination' as used in this Endorsement includes (but is not limited to):

a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a 'hazardous substance' by the United States Environmental Protection Agency or as a 'hazardous material' by the United States Department of Transportation, or defined as a 'toxic substance' by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

**Page 2 of 8**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## 4) DEBRIS REMOVAL ENDORSEMENT

This Debris Removal Endorsement replaces the HO 00 06 05 11 Section I D. Additional Coverage 1.Debris Removal or in respect of HO 00 03 & HO 00 05 Section I E. Additional Coverage 1. Debris Removal.

THIS ENDORSEMENT CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained in this Endorsement shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive Contamination Exclusion or any other Exclusion applicable to this Policy.

1. In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also insures, within the Sum Insured, subject to the limitations and method of calculation below, and to all the other terms and conditions of the Policy, costs or expenses;

    (a) which are reasonably and necessarily incurred by the Assured in the removal, from the premises of the Assured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and

    (b) of which the Assured becomes aware and advises the amount thereof to Underwriters hereon within one year of the commencement of such Damage or Destruction.

2. In calculating the amount, if any, payable under this Policy for loss where costs or expenses for removal of debris are incurred by the Assured (subject to the limitations in paragraph 1 above):

    (a) the maximum amount of such costs or expenses that can be included in the method of calculation set out in (b) below shall be the greater of US$25,000 (twenty-five thousand dollars) or 10% (ten percent) of the amount of the Damage or Destruction from which such costs or expenses result; and

    (b) the amount of such costs or expenses as limited in (a) above shall be added to:

        (i) the amount of the Damage or Destruction; and

        (ii) all other amounts of loss, which arise as a result of the same occurrence, and for which Underwriters hereon also agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay; and

    the resulting sum shall be the amount to which any deductible or underlying amount to which this Policy is subject and the limit (or applicable sub-limit) of this Policy, shall be applied.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## 5) PROPERTY CYBER AND DATA EXCLUSION

1   Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any:

   1.1   Cyber Loss;
   1.2   loss, damage, liability, claim, cost, expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any loss of use, reduction in functionality, repair, replacement, restoration or reproduction of any Data, including any amount pertaining to the value of such Data;

   regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2   In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

3   This endorsement supersedes and, if in conflict with any other wording in the Policy or any endorsement thereto having a bearing on Cyber Loss or Data, replaces that wording.

### Definitions

4   Cyber Loss means any loss, damage, liability, claim, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any Cyber Act or Cyber Incident including, but not limited to, any action taken in controlling, preventing, suppressing or remediating any Cyber Act or Cyber Incident.

5   Cyber Act means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any Computer System.

6   Cyber Incident means:
   6.1   any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any Computer System; or
   6.2   any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any Computer System.

7   Computer System means:
   7.1   any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility,

   owned or operated by the Insured or any other party.

8   Data means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a Computer System.

**LMA5401** Form approved by Lloyd's Underwriters Non-Marine Association

**Page 4 of 8**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## 6) ELECTRONIC DATE RECOGNITION EXCLUSION (LISTED PERILS)

1. This policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

   a) the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

   b) any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

   This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

2. However, in the event that a peril listed below results from 1.(a) or 1.(b) above, this policy, subject to all its other terms, conditions and exclusions, will cover physical damage occurring during the policy period to property insured by this policy directly caused by such listed peril.

   **Listed Perils:**
   - Fire
   - Explosion

3. Notwithstanding Section 2 above, this policy does not cover any costs and expenses, whether preventative, remedial or otherwise, arising out of or relating to change, alteration or modification of any computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

   **NMA2808** Form approved by Lloyd's market Association [Non-Marine]

## 7) BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**NMA2962** Form approved by Lloyd's market Association [Non-Marine]

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## 8) ASBESTOS EXCLUSION

It is agreed that this Insurance excludes direct or indirect loss or damage and liability arising out of or caused directly or indirectly by the actual or alleged:

1) exposure to, inhalation, ingestion or existence of asbestos, or any other material, substance or structure containing asbestos; or

2) repair, removal, encapsulation, abatement, replacement or handling of asbestos, or any other material, substance or structure containing asbestos;

whether or not the asbestos is or was at any time airborne, contained in a product or structure, ingested, inhaled, transmitted in any fashion or found in any form whatsoever.

## 9) LEAD EXCLUSION

It is agreed that this Insurance excludes direct or indirect loss or damage and liability arising out of or caused directly or indirectly by the actual or alleged:

1) exposure to or existence of lead or any material or substance containing lead; or

2) repair, removal, encapsulation, abatement, replacement or handling of lead or any other material or substance containing lead;

whether or not the lead is or was at any time airborne, contained in a product, ingested, inhaled, transmitted in any fashion or found in any form whatsoever.

This exclusion also applies to any loss, cost, expense or damages, whether direct or consequential, arising out of any:

a) request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat, or neutralise lead or any other material or substance containing lead or in any way respond to, or assess the effects of lead, or

b) claim or suit relating to testing for, monitoring, cleaning up, removing, abating, containing, treating or neutralising lead or any other material substance containing lead or in any way responding to, or assessing the effects of lead.

## 10) EXTERIOR INSULATION and FINISH SYSTEMS (EIFS) EXCLUSION

We (Insurers) do not insure for loss or damage caused directly or indirectly by any installation, repair, maintenance or use of the following:

Exterior Insulation Finish System (EIFS), also known as Exterior Hybrid Stucco Cladding, Fake Stucco, Synthetic Stucco, or any other similar exterior coating, which results in damage including, but not limited to, fungi, seepage, rot, delamination, detachment, collapse, or imminent collapse, cracking, or insect damage.

**Page 6 of 8**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

The language of this endorsement supersedes any conflicting wording within your policy.

## 11) LIABILITY EXCLUSIONS

### i) Abuse Exclusion

It is agreed that this Insurance excludes liability arising out of or caused directly or indirectly by any actual or alleged sexual molestation, corporal punishment, physical or mental abuse, assault or battery or any act or omission in respect of the prevention or suppression of such sexual molestation, corporal punishment, physical or mental abuse, assault or battery.

### ii) Electromagnetic Fields Exclusion

It is agreed that this Insurance excludes direct or indirect loss or damage and liability arising out of or caused directly or indirectly by the actual or alleged exposure to electromagnetic fields, whether naturally occurring or man-made.

### iii) Radon Gas Exclusion

It is agreed that this Insurance excludes direct or indirect loss or damage and liability arising out of or caused directly or indirectly by the actual or alleged:
   i)   exposure to, inhalation, ingestion or existence of radon gas; or
   ii)  removal, encapsulation, abatement, or handling of radon gas.

### iv) Swimming Pool Liability Exclusion

It is agreed that this Insurance excludes liability arising from the use or ownership of any swimming pool that does not comply with any Federal, State, local government or other governmental authority law or regulation.

### v) Employment Liability Exclusion

It is agreed that this Insurance excludes liability arising from a refusal or failure to employ, promote or fairly compensate any person, or from supervision or failure to supervise, coercion, reassignment, discipline, defamation, harassment, intimidation, creation of a hostile work environment, humiliation or discrimination of any person.

### vi) Employee Benefits and Workers Compensation Exclusion

It is agreed that this Insurance excludes liability arising from any act, error or omission in respect of the provision of employee benefits of any kind. It shall also exclude any liability **arising under any worker's compensation scheme, disability laws or statutes.**

### vii) Fines and Penalties Exclusion

This insurance shall not indemnify the Insured in respect of fines, penalties, punitive damages, exemplary or non compensatory damages, or any damages resulting from the multiplication of compensatory damages.

### viii) Dangerous Pets Exclusion

It is agreed that this Insurance excludes liability caused directly or indirectly by dangerous pets in the ownership or care, custody and control of the Assured including, but not limited to:

a) Pit Bull Terriers; b) Wolf-Dog Hybrids; c) Dogs bred to guard property; d) Farm and ranch herding dogs; e) Snakes; f) Alligators; g) Cats normally found in the wild or in zoos.

## 12) LLOYD'S PRIVACY POLICY STATEMENT

### UNDERWRITERS AT LLOYD'S, LONDON

The Certain Underwriters at Lloyd's, London want you to know how we protect the confidentiality of your non-public personal information. We want you to know how and why we use and disclose the information that we have about you. The following describes our policies and practices for securing the privacy of our current and former customers.

### INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:
- Information contained in applications or other forms that you submit to us, such as name, address, and social security number
- Information about your transactions with our affiliates or other third-parties, such as balances and payment history
- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

### INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services. We may also disclose information when the law requires or permits us to do so.

### CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information. We have measures in place to secure our paper files and computer systems.

### RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION

**You have a right to request access to or correction of your personal information that is in our possession.**

### CONTACTING US

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance. We can provide a more detailed statement of our privacy practices upon request.

*LSW1135B*

All other provisions of this policy apply.

**BSLHO00321212**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**HOMEOWNERS**
**BSLHO 03 17 01 13**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

### SCHEDULE

**Windstorm Or Hail Deductible Percentage Amount: 5 %**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR NAMED STORM OR WIND/HAIL LOSSES, WHICH MAY RESULT IN HIGH OUT-OFPOCKET EXPENSES TO YOU. THE ENCLOSED EXAMPLE ILLUSTRATES HOW THE DEDUCTIBLE MIGHT AFFECT YOU.

### SECTION I – CONDITIONS

**B. Deductible**

The following special deductible is added to the policy:

With respect to the peril of Windstorm Or Hail, for any one loss, we will pay only that part of the total of all loss payable that exceeds the windstorm or hail percentage deductible.

The dollar amount of the windstorm or hail deductible is determined by multiplying the Coverage A Limit Of Liability shown in the Declarations by the deductible percentage amount shown in the Schedule above.

No other deductible in the policy applies to loss caused by windstorm or hail.

**Examples**

The Coverage A – Dwelling Limit Of Liability shown in the Declarations is $100,000.

1.  If the deductible percentage amount is 1% and the total of all loss to the dwelling is $10,000, calculate as follows:

Step 1:   $100,000 x 1% = deductible of $1,000
Step 2:   $10,000 loss - $1,000 deductible = $9,000

The amount of loss the "insured" would recover is $9,000.

2.  If the deductible percentage amount is 3% and the total of all loss to the dwelling is $10,000, calculate as follows:

Step 1:   $100,000 x 3% = deductible of $3,000
Step 2:   $10,000 loss - $3,000 deductible = $7,000

The amount of loss the "insured" would recover is $7,000.

3.  If the deductible percentage amount is 5% and the total of all loss to the dwelling is $10,000, calculate as follows:

Step 1:   $100,000 x 5% = deductible of $5,000
Step 2:   $10,000 loss - $5,000 deductible = $5,000

The amount of loss the "insured" would recover is $5,000.

All other provisions of this policy apply.

**BSLHO 03 17 01 13**       Includes Copyrighted material of Insurance Services Office, Inc.       **Page 1 of 1**
with its permission

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

HOMEOWNERS
HO 04 55 03 03

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# IDENTITY FRAUD EXPENSE COVERAGE

## DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Identity fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

2. "Expenses" means:

   a. Costs for notarizing affidavits or similar documents which attest to fraud required by financial institutions or similar credit grantors or credit agencies.

   b. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

   c. Lost income resulting from time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $200 per day. Total payment for lost income is not to exceed $5,000.

   d. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

   e. Reasonable attorney fees incurred as a result of "identity fraud" to:

      (1) Defend lawsuits brought against an "insured" by merchants, financial institutions or their collection agencies;
      (2) Remove any criminal or civil judgments wrongly entered against an "insured";and
      (3) Challenge the accuracy or completeness of any information in a consumer credit report.

   f. Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud".

The following Additional Coverage is added under

**Section I:**

### IDENTITY FRAUD EXPENSE

We will pay up to $15,000 for "expenses" incurred by an "insured" as the direct result of any one "identity fraud" first discovered or learned of during the policy period.

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an "insured", is considered to be one "identity fraud", even if a series of acts continues into a subsequent policy period.

This coverage is additional insurance.

## EXCLUSIONS

The following additional exclusions apply to this coverage:

We do not cover:

1. Loss arising out of or in connection with a "business".

2. "Expenses" incurred due to any fraudulent, dishonest or criminal act by an "insured" or any person aiding or abetting an "insured", or by any authorized representative of an "insured", whether acting alone or in collusion with others.

3. Loss other than "expenses".

## SPECIAL DEDUCTIBLE

We will pay only that part of the loss that exceeds $250. No other deductible applies to "identity fraud" expense coverage.

## SECTION I - CONDITION

### B. Duties After Loss

The following is added:

Send to us, within 60 days after our request, receipts, bills or other records that support your claim for "expenses" under "identity fraud" coverage.

All other provisions of this policy apply.

HO 04 55 03 03              © Insurance Services Office, Inc., 2010              Page 1 of 1

46

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**HOMEOWNERS BSLHO 05 30 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNCTIONAL REPLACEMENT COST LOSS SETTLEMENT
### HO 3 and HO 5

### Definitions

The following definition is added when this endorsement is attached to the policy:

"Functional replacement cost" means the amount which it would cost to repair or replace the damaged building with less costly common construction materials and methods which are functionally equivalent to obsolete, antique or custom construction materials and methods used in the original construction of the building.

### SECTION I – CONDITIONS

### D. Loss Settlement

Paragraph **2.** is deleted and replaced by the following:

2. Buildings covered under Coverage **A** or **B**:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the "functional replacement cost" of the building immediately before the loss and you contract for repair or replacement of the damaged building for the same use, within 180 days of the damage unless we and you otherwise agree, we will pay, after application of any deductible, the lesser of the following amounts:

      (1) The limit of liability under this policy that applies to the building; or

      (2) The necessary amount actually spent to repair or replace the damaged building on a "functional replacement cost" basis.

   b. If you do not make claim under **2.a.** above, we will pay, after application of any deductible, the least of the following amounts:

   (1) The limit of liability under this policy that applies to the building; (2) The actual cash value of the damaged part of the building; or (3) The amount which it would cost to repair or replace the damaged building on a "functional replacement cost" basis.

   c. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the "functional replacement cost" of the building immediately before the loss, we will pay that proportion of the cost to repair or replace that part of the building damaged:

   (1) After application of any deductible; and

   (2) Without deduction for depreciation;

   which the total amount of insurance in this policy on the damaged building bears to 80% of the "functional replacement cost" of the building, but not more than the limit of liability under this policy that applies to the building.

   d. To determine the amount of insurance required to equal 80% of the "functional replacement cost" of the building immediately before the loss, do not include the value of:

   (1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

   (2) Those supports in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

   (3) Underground flues, pipes, wiring and drains.

47

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

e. If the actual cash value of the damage is less than the "functional replacement cost" then:

(1) We will pay no more than the actual cash value of the damage until replacement is complete. Once replacement is complete, we will settle the loss according to the provisions of **2.a.** and **c.** above.

However, if the cost to functionally repair the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2,500;

we will settle the loss according to the provisions of **2.a.** and **c.** above whether or not replacement is complete.

(2) You may disregard the "functional replacement cost" loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis.

You may then make claim for any additional liability according to the provisions of this Condition D. Loss Settlement, provided you notify us of your intent to do so within 180 days of the date of loss.

All other provisions of this policy apply.

BSLHO 05 30 12 19

48

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**HOMEOWNERS**
**HO 24 82 04 02**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PERSONAL INJURY

### DEFINITIONS

The following definitions are added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

However, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

### SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

The following is added to Coverage **E** – Personal Liability:

#### Personal Injury Coverage

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

### SECTION II – EXCLUSIONS

With respect to the coverage provided by this endorsement, **Section II – Exclusions** is deleted and replaced by the following:

This insurance does not apply to:

1. "Personal Injury":

   a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

   b. Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

   c. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   d. Arising out of a criminal act committed by or at the direction of an "insured";

   e. Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership maintenance or use of the premises;

   f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

   g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   This exclusion does not apply to:

   (1) The rental or holding for rental of an "insured location";

      (a) On an occasional basis if used only as a residence;

      (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

h. Arising out of civic or public activities performed for pay by an "insured";

i. To you or an "insured" as defined under Definition **5.a.** or **b.**;

This exclusion also applies to any claim made or suit brought against you or an "insured":

(1) To repay; or

(2) Share damages with; or

Another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

j. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

k. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

2. Any loss, cost or expense arising out of any:

a. Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, "fungi", wet or dry rot, or bacteria; or

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants, "fungi", wet or dry rot, or bacteria.

## SECTION II – ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, Paragraph **D. Loss Assessment** is deleted and replaced by the following:

### D. Loss Assessment

We will pay up to $1000 for your share of loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of "personal injury".

## SECTION II – CONDITIONS

With respect to the coverage provided by this endorsement, Section **II** – Condition I. Policy Period does not apply and Conditions **A. Limit Of Liability, B. Severability Of Insurance** and **C. Duties After "Occurrence"** are deleted and replaced by the following:

### A. Limit Of Liability

Our total liability under "Personal Injury" Coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage **E.** This limit is the same regardless of the number of "insureds", claims made or suits brought.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

### C. Duties After Offense

In the event of a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

a. The identity of the policy and "named insured";

b. Reasonably available information on the time, place and circumstances of the offense; and

c. Names and addresses of any claimants and witnesses;

© ISO Properties, Inc., 2001

HO 24 82 04 02

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the offense;

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury".

All other provisions of this policy apply.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**BSLHO 04920222**

**BEAZLEY USA SERVICES, INC.**
**HOUSEHOLD PROPERTY PROGRAM**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WATER OR STEAM DAMAGE ENDORSEMENT

The most we will pay in total for the sum of all covered claims during the period of insurance for all insured loss, damage, cost or expense (including loss of use where provided under this policy) caused by or arising from the discharge, leakage or overflow of water or steam from within a plumbing, heating, air conditioning, automatic fire protective sprinkler system or a household appliance which has been caused by a Peril Insured Against, regardless of the number of occurrences, is USD $25,000.

All other terms and conditions of your insurance remain unchanged.

52

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

BSLHO00710313

**BEAZLEY USA SERVICES, INC.**
**HOMEOWNERS PROGRAM**
**REPLACEMENT COST SETTLEMENT COVERAGE C – PERSONAL PROPERTY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies the HO 00 05 (05/11) – Homeowners 5 – Comprehensive Form &
HO 00 03 (05/11) – Homeowners 3 – Special Form.

SECTION I – CONDITIONS, D. **Loss Settlement** part 1 Is amended by the deletion of 'a. Personal
property', so that part 1 reads:

1.  Property of the following types:
    a.  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment,
        whether or not attached to bulldings;
    b.  Structures that are not buildings; and
    c.  Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

SECTION I – CONDITIONS, D. **Loss Settlement** part 2 - the first paragraph is amended by the
addition of 'and Personal Property Coverage C' so it reads:

2. Bulldings under Coverage A or B and Personal Property Coverage C (excluding Items listed In
    1.a, b and c of D. Loss Settlement) at replacement cost without deduction for depreciation,
    subject to the following:

All other provisions of this policy apply.

BSLHO00710313

53

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number
Policy Number: W5146124PNYH

HOMEOWNERS
HO 04 47 01 21(amended)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL SUPPLEMENTAL LOSS ASSESSMENT COVERAGE (HO3 & HO5)

### SCHEDULE

| "Residence Premises" - Additional Amount Of Insurance: $5,000 |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**1. Additional Insurance – Residence Premises**

We will pay, up to the additional amount of insurance shown in the Schedule above, for one or more assessments arising out of a single loss covered under:

a. Section I - Additional Coverage E.7. Loss Assessment;

b. Section II - Additional Coverage D. Loss Assessment; or

c. Both a. and b. above.

**2. Application**

The applicable limit for loss assessment coverage is the most we will pay with respect to any one loss, regardless of the number of assessments.

**3. Maximum Amount Of Assessment Coverage You Have For Any Property Loss**

The maximum amount of loss assessment coverage for any one property loss, regardless of the number of assessments, shall be an amount equal to your "resident premises" loss assessment coverage limit in effect one day before the date of the occurrence that gave rise to the loss. Such coverage is applicable to any loss assessment regardless of the date of the assessment by the association.

Any changes to the limits of your "resident premises" coverage for loss assessments made on or after the day before the date of the occurrence are not applicable to such loss.

No deductible applies to the additional amount of coverage provided under this endorsement.

**4. Section II - Exclusions**

Section II - F. **Coverage** E **Personal Liability** Exclusion 1.a. does not apply to this coverage.

**5. Policy Period**

a. Paragraph Q. **Policy Period** under **Section I - Conditions;** and

b. Paragraph I. **Policy Period** under **Section II - Conditions;**

do not apply to this coverage.

All other provisions of this policy apply.

HO 04 47 01 21(amended)

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.

Page 1 of 1

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

HOMEOWNERS
BSLHO 05 00 05 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN ENDORSEMENT

### Attaching to HO 00 05 05 11 & HO 00 03 05 11

For an additional premium, we will provide insurance as described in this endorsement.

### A. Equipment Breakdown Coverage

1. With regard to Coverage A — Dwelling, Coverage B — Other Structures, and Coverage C — Personal Property provided elsewhere in this policy, the following is added to PERILS INSURED AGAINST: We will pay for direct physical loss to Covered Property caused by a "breakdown" to "covered equipment".

2. With regard to Coverage D - Loss of Use provided elsewhere in this policy, such coverage is extended to include loss caused by a "breakdown" to "covered equipment".

### B. Equipment Breakdown Coverage Extension

With respect to coverage provided by this endorsement, we provide the following additional coverage for loss caused by or resulting from a "breakdown" to "covered equipment".

**Pollutants** -- We will pay for the additional cost to repair or replace covered property because of contamination by "pollutants". This includes the additional expenses to clean up or dispose of such property. We will also pay the cost to extract "pollutants" from land or water on the "residence premises".

Additional costs mean those in excess of what would have been required to repair or replace damage to covered property had no "pollutants" been involved.

The most we pay for loss, damage, or expense under this Coverage Extension, is $50,000. This amount is part of, not in addition to, the limit applicable to this endorsement as shown in paragraph 1 of E. Limit of Liability.

### C. Equipment Breakdown Exclusions

With regard to the coverage provided by this endorsement only, the following exclusions apply in addition to the Exclusions found elsewhere in this policy:

1. We will not pay for a "breakdown" caused directly or indirectly by or resulting from any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area: fire; lightning; windstorm; hail; explosion; riot or civil commotion; vehicles; smoke; vandalism or malicious mischief, theft; falling objects; weight of ice, snow or sleet; freezing; water or steam; or collapse. However, we will pay for a "breakdown" to "covered equipment" if fire; explosion; riot or civil commotion; vehicles; smoke; vandalism or malicious mischief; or theft occurs away from the "residence premises" shown in the declarations and causes an electrical surge or other electrical disturbance that comes through utility transmission lines.

2. We will not pay for a loss caused directly or indirectly by or resulting from any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss: wear and tear, including damage caused by marring, deterioration, inherent vice, latent defect, rust, corrosion, erosion, contamination except as provided by the Pollutants Coverage Extension(if any), or smog. However, we will pay for a "breakdown" to "covered equipment" that ensues from wear and tear, including damage caused by marring, deterioration, inherent vice, latent defect, rust, corrosion, erosion, contamination, or smog.

BSLHO 05 00 05 15         Includes copyrighted material of Insurance Services Office, Inc. with its permission. Page 1 of 3

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

HOMEOWNERS
BSLHO 05 00 05 15

### D. Conditions

The following provision applies to the coverage provided by this endorsement in addition to the provisions in D. Loss Settlement of Section I - CONDITIONS:

**New Generation.** If "covered equipment" cannot be repaired or the cost to repair is more than the cost to replace, the following provision may be chosen:

If you want to replace damaged "covered equipment" with a newer generation "covered equipment" of the same capacity, we will pay up to 25% more than "covered equipment" of like kind, quality and capacity would have cost at the time of the "breakdown".

### E. Limit of Liability:

1. The most we will pay for a loss covered under this endorsement is $50,000 or the Equipment Breakdown Limit of Insurance shown in the Declarations, whichever is greater. This amount is part of, not in addition to, the applicable Limit of Liability shown in the Declarations.

2. The most we will pay for a loss involving the spoilage of perishable property is $3,000. This amount is part of not in addition to the amount in E.1. above.

### F. Deductible:

Subject to the Limit of Liability in E. above, we will only pay that part of the total for all loss payable under this endorsement that exceeds the deductible shown in the Declarations.

### G. Definitions. The following definitions apply in addition to other definitions found elsewhere in the policy.

#### 1. "Breakdown"

a. "Breakdown" means a fortuitous event that causes direct physical damage to "covered equipment" caused by the following:

(1) Electrical failure caused by artificially generated electric current, including arcing;

(2) Failure of pressure or vacuum equipment; or

(3) Mechanical failure including rupture or bursting caused by centrifugal force;

At the time the "breakdown" occurs, it must manifest itself by physical damage to the "covered equipment" that necessitates repair or replacement.

b. "Breakdown" does not mean:

(1) Defects, erasures, errors, limitations or viruses in "computer equipment", "data", "media" and/or programs including the inability to recognize and process any date or time or provide instructions to "covered equipment". However, if a "breakdown" to "covered equipment" ensues, we will pay the ensuing loss or damage not otherwise excluded;

(2) Functioning of any safety or protective device;

(3) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection; or

(4) Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification.

#### 2. "Computer Equipment" means:

a. Your programmable electronic equipment that is used to store, retrieve and process data; and

b. Associated peripheral equipment that provides communication including input and output functions such as printing or auxiliary functions such as data transmission.

It does not include "data" or "media".

#### 3. "Covered Equipment"

a. "Covered equipment" means and includes any:

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

HOMEOWNERS
BSLHO 05 00 05 15

(1) Equipment designed and built to operate under internal pressure or vacuum other than weight of contents;

(2) Electrical or mechanical equipment that is used in the generation, transmission or utilization of energy; or

(3) Communication equipment and "computer equipment"; or

(4) Fiber optics.

**b.** "Covered equipment" does not mean or include any:

(1) "Media";

(2) Insulating or refractory material;

(3) Pressure vessels and piping that are buried below ground and require the excavation of materials to inspect, remove, repair or replace;

(4) Structure, foundation, cabinet or compartment supporting or containing the "covered equipment" or part of the "covered equipment" including well casing;

(5) "Motor vehicle", tractor or watercraft, including any "covered equipment" mounted on or used solely with any "motor vehicle", tractor or watercraft;

(6) Outside yard maintenance equipment, including but not limited to lawn mowers, garden tractors, snow removal equipment, weed whackers, chain saws, log slitters, wood chippers and blowers; or

(7) Excavation or construction equipment including any "covered equipment" mounted on or used solely with any excavation or construction equipment.

**4. "Data"** means:

a.   Programmed and recorded material stored on "media" and

b.   Programming records used for electronic data processing, or electronically controlled equipment.

**5. "Media"** means electronic data processing or storage material such as films, tapes, discs, drums or cells. However, "media" does not include any hard disc drive that is an internal corn ponent of "computer equipment".

**H.** If a loss covered under this EQUIPMENT BREAKDOWN ENDORSEMENT is also covered elsewhere in this policy, the coverage provided by this EQUIPMENT BREAKDOWN ENDORSEMENT is excess over any amount covered elsewhere in this policy.

BSLHO00480808

**BEAZLEY USA SERVICES, INC.**
**HOMEOWNERS PROGRAM**
**Existing Damage Endorsement**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

The following exclusion and limitation are added to the conditions of this policy.

Exclusion:

We do not insure for property damage which is **Existing Damage** or occurs because of **Existing Damage.** Such damage is excluded regardless of any other cause or event contributing concurrently or in any sequence. This exclusion applies whether or not the Occurrence or Peril Insured resulted in widespread damage or only affects the insured location.

**Existing Damage**, meaning:

1. Any property damage which occurred prior to inception of this policy regardless of whether such damage was apparent at the time of inception of this policy or became apparent at a later date;

2. Any property damage arising out of workmanship, repairs and/or lack of repairs arising from damage which occurred prior to inception of this policy.

Limitation:

In respect of the property damage cover provided by this policy for the undamaged part of a building that is undergoing repairs for **Existing Damage,** as defined above, coverage will be limited to the actual cash value of the building at the time of a covered Occurrence or Peril Insured during this policy's period.

All other terms, conditions and exclusions of the policy remain unchanged.

BSLHO00480808

58

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

POLICY NUMBER: W5146124PNYH

**HOMEOWNERS**
**HO 23 20 07 15(amended)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW COVERAGE

## SCHEDULE

| | |
|---|---|
| Water Back-up And Sump Discharge Or Overflow Coverage Combined Single Limit Of Liability: | $25,000 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Definitions**

With respect to the coverage provided by this endorsement, the following definition is added:

**12.** "Flood":

a. Means a general and temporary condition of partial or complete inundation of normally dry land areas from:

(1) The overflow of inland or tidal waters;

(2) The unusual and rapid accumulation or runoff of surface water from any source; or

(3) Mudslides that are proximately caused by the unusual and rapid accumulation or runoff of surface water from any source and are similar to a river of liquid and flowing mud on the surface of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current.

b. Includes a general and temporary condition of partial or complete inundation of normally dry land areas from the overflow of inland or tidal waters due to the collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by:

(1) Waves or currents of water exceeding anticipated cyclical levels or suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm;

(2) An unanticipated force of nature, such as a flash flood or abnormal tidal surge; or

(3) A similarly unusual and unforeseeable event.

**B. Section I - Property Coverages**

**E. Additional Coverages**

The following coverage is added:

**Sewer Or Drain Water Back-up Or Sump Discharge Or Overflow Coverage**

We will pay up to the Limit Of Liability shown in the Schedule for direct physical loss, not caused by the negligence of an "insured" to property covered under Section I, caused by water, or waterborne material, which:

**1.** Backs up through sewers or drains; or

**2.** Overflows or is discharged from a:

a. Sump, sump pump; or

b. Related equipment;

even if such overflow or discharge results from mechanical breakdown or power failure. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown or power failure.

This coverage does not increase the limits of liability for Coverage **A, B, C** or **D** stated in the Declarations.

**C. Section I - Perils Insured Against**

With respect to the coverage provided under this endorsement, Paragraphs:

**A.2.c.(6)(b)** in Form **HO 00 03;**

**A.2.e.(2)** in Form **HO 00 05;**

**2.j.(2)** in Endorsement **HO 05 24;**

**3.j.(2)** in Endorsement **HO 17 31;** and

**2.c.(6)(b)** in Endorsement **HO 17 32;**

are replaced by the following:

Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## D. Section I - Exclusions

With respect to the coverage provided under this endorsement:

1. The **Water** Exclusion is replaced by the following:

   **Water**

   This means water which backs up through sewers or drains, or overflows or is discharged from a sump, sump pump or related equipment, as a direct or indirect result of:

   a. "Flood";

   b. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

   c. Waterborne material carried or otherwise moved by any of the water referred to in **D.1.a.** through **D.1.b.** of this exclusion.

   This exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

   However, direct loss by fire, explosion or theft resulting from any of the above, in **D.1.a.** through **D.1.c.**, is covered.

2. The **Power Failure** Exclusion does not apply.

All other provisions of this Policy apply.

Includes copyrighted material of Insurance Services Office., with its permission.

**HO 23 20 07 15(amended)**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

BSLHO13480120

**BEAZLEY USA SERVICES, INC.**
**HOMEOWNERS HO-3, HO-5, HO-6 and DP-3.**

**TOTAL LOSS OR CONSTRUCTIVE LOSS**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

This endorsement restricts the Homeowners 5 - Comprehensive Form, the Homeowners 3 - Special Form, Homeowners 6 - Unit-Owners form and the Dwelling Property 3 - Special form.

**TOTAL OR CONSTRUCTIVE LOSS CLAUSE**

It is understood and agreed that in the event of a total loss or constructive total loss under the policy, the entire policy premium shall be earned in full and no return premium shall be due to the Named Insured.

All other provisions of this policy apply.

BSLHO13480120

61

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## COMMUNICABLE DISEASE ENDORSEMENT

### (For use on property policies)

1.   This policy, subject to all applicable terms, conditions and exclusions, covers losses attributable to direct physical loss or physical damage occurring during the period of insurance. Consequently and notwithstanding any other provision of this policy to the contrary, this policy does not insure any loss, damage, claim, cost, expense or other sum, directly or indirectly arising out of, attributable to, or occurring concurrently or in any sequence with a Communicable Disease or the fear or threat (whether actual or perceived) of a Communicable Disease.

2.   For the purposes of this endorsement, loss, damage, claim, cost, expense or other sum, includes, but is not limited to, any cost to clean-up, detoxify, remove, monitor or test:

2.1.   for a Communicable Disease, or

2.2.   any property insured hereunder that is affected by such Communicable Disease.

3.   As used herein, a Communicable Disease means any disease which can be transmitted by means of any substance or agent from any organism to another organism where:

3.1.   the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not, and

3.2.   the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between organisms, and

3.3.   the disease, substance or agent can cause or threaten damage to human health or human welfare or can cause or threaten damage to, deterioration of, loss of value of, marketability of or loss of use of property insured hereunder.

4.   This endorsement applies to all coverage extensions, additional coverages, exceptions to any exclusion and other coverage grant(s).

**All other terms, conditions and exclusions of the policy remain the same.**

LMA5393

25 March 2020

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

**BSLHO0004 0805**

**BEAZLEY USA SERVICES, INC.**
**HOMEOWNERS PROGRAM**

**MINIMUM EARNED PREMIUM – SPECIAL PROVISION**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MINIMUM EARNED PREMIUM CLAUSE**

In the event of cancellation of this policy by you, 25 percent of the premium listed on the Declaration page shall become fully earned, any provision of the policy to the contrary notwithstanding

Your failure to make timely payment of premium shall be considered a request by you for us to cancel on you behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if you remit and we receive the full policy premium within 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by us shall not affect the minimum earned provision of this endorsement. In the event of any other cancellation by us, the earned premium shall be computed pro-rata, not subject to the minimum earned premium

**BSLHO0004 0805**

Date Filed 11/26/2025 3:48 PM
Superior Court-Bristol
Docket Number POLICY NUMBER: W5146124PNYH

**HOMEOWNERS
HO 04 46 10 00**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# INFLATION GUARD

### SCHEDULE*

| |
|---|
| Percentage Amount: 6% |

*Entry may be left blank if shown elsewhere in this policy for this coverage.

The limits of liability for Coverages **A, B, C** and **D** will be increased annually by the percentage amount that is:

**1.** Shown in the Schedule above; and

**2.** Applied pro rata during the policy period.

HO 04 46 10 00                    Copyright, Insurance Services Office, Inc., 1999                    **Page 1 of 1**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

· BSLHO 0033 0921

**BEAZLEY USA SERVICES, INC.**
**HOMEOWNERS PROGRAM**
**HOMEOWNERS STANDARD EXCLUSIONS (but Limited Fungi), DEBRIS REMOVAL**
**ENDORSEMENT, AND PRIVACY STATEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Incorporating:
  1) WAR AND TERRORISM EXCLUSION ENDORSEMENT (NMA2918)
  2) LAND, WATER AND AIR EXCLUSION
  3) SEEPAGE &/OR POLLUTION AND/OR CONTAMINATION EXCLUSION
  4) DEBRIS REMOVAL ENDORSEMENT
  5) PROPERTY CYBER AND DATA EXCLUSION (LMA5401)
  6) BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION (NMA2962)
  7) ASBESTOS EXCLUSION
  8) LEAD EXCLUSION
  9) EXTERIOR INSULATION and FINISH SYSTEMS (EIFS) EXCLUSION
  10) SANCTION LIMITATION AND EXCLUSION CLAUSE(LMA3100)
  11) LIABILITY EXCLUSIONS
  12) LLOYD'S PRIVACY POLICY STATEMENT (LSW1135B)

## 1) WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

  1) war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

  2) any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

**Page 1 of 8**

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**NMA2918** Form approved by Lloyd's Underwriters' Non-Marine Association

## 2) LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

## 3) SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

a)  any loss, damage, cost or expense, or

b)  any increase in insured loss, damage, cost or expense, or

c)  any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority; or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term 'any kind of seepage or any kind of pollution and/or contamination' as used in this Endorsement includes (but is not limited to):

a)  seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a 'hazardous substance' by the United States Environmental Protection Agency or as a 'hazardous material' by the United States Department of Transportation, or defined as a 'toxic substance' by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

b)  the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

## 4) DEBRIS REMOVAL ENDORSEMENT

This Debris Removal Endorsement replaces the HO 00 06 05 11 Section I D. Additional Coverage 1.Debris Removal or in respect of HO 00 03 & HO 00 05 Section I E. Additional Coverage 1. Debris Removal.

THIS ENDORSEMENT CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained in this Endorsement shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive Contamination Exclusion or any other Exclusion applicable to this Policy.

1. In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also insures, within the Sum Insured, subject to the limitations and method of calculation below, and to all the other terms and conditions of the Policy, costs or expenses;

   (a) which are reasonably and necessarily incurred by the Assured in the removal, from the premises of the Assured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and

   (b) of which the Assured becomes aware and advises the amount thereof to Underwriters hereon within one year of the commencement of such Damage or Destruction.

2. In calculating the amount, if any, payable under this Policy for loss where costs or expenses for removal of debris are incurred by the Assured (subject to the limitations in paragraph 1 above):

   (a) the maximum amount of such costs or expenses that can be included in the method of calculation set out in (b) below shall be the greater of US$25,000 (twenty-five thousand dollars) or 10% (ten percent) of the amount of the Damage or Destruction from which such costs or expenses result; and

   (b) the amount of such costs or expenses as limited in (a) above shall be added to:

      (i) the amount of the Damage or Destruction; and

      (ii) all other amounts of loss, which arise as a result of the same occurrence, and for which Underwriters hereon also agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay; and

   the resulting sum shall be the amount to which any deductible or underlying amount to which this Policy is subject and the limit (or applicable sub-limit) of this Policy, shall be applied.

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## 5) PROPERTY CYBER AND DATA EXCLUSION

1   Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any:

   1.1   Cyber Loss;

   1.2   loss, damage, liability, claim, cost, expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any loss of use, reduction in functionality, repair, replacement, restoration or reproduction of any Data, including any amount pertaining to the value of such Data;

regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2   In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

3   This endorsement supersedes and, if in conflict with any other wording in the Policy or any endorsement thereto having a bearing on Cyber Loss or Data, replaces that wording.

### Definitions

4   Cyber Loss means any loss, damage, liability, claim, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any Cyber Act or Cyber Incident including, but not limited to, any action taken in controlling, preventing, suppressing or remediating any Cyber Act or Cyber Incident.

5   Cyber Act means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any Computer System.

6   Cyber Incident means:

   6.1   any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any Computer System; or

   6.2   any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any Computer System.

7   Computer System means:

   7.1   any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility,

owned or operated by the Insured or any other party.

8   Data means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a Computer System.

**LMA5401** Form approved by Lloyd's Underwriters Non-Marine Association

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## 6) BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**NMA2962** Form approved by Lloyd's market Association [Non-Marine]

## 7) ASBESTOS EXCLUSION

It is agreed that this Insurance excludes direct or indirect loss or damage and liability arising out of or caused directly or indirectly by the actual or alleged:

1) exposure to, inhalation, ingestion or existence of asbestos, or any other material, substance or structure containing asbestos; or

2) repair, removal, encapsulation, abatement, replacement or handling of asbestos, or any other material, substance or structure containing asbestos;

whether or not the asbestos is or was at any time airborne, contained in a product or structure, ingested, inhaled, transmitted in any fashion or found in any form whatsoever.

## 8) LEAD EXCLUSION

It is agreed that this Insurance excludes direct or indirect loss or damage and liability arising out of or caused directly or indirectly by the actual or alleged:

1) exposure to or existence of lead or any material or substance containing lead; or

2) repair, removal, encapsulation, abatement, replacement or handling of lead or any other material or substance containing lead;

whether or not the lead is or was at any time airborne, contained in a product, ingested, inhaled, transmitted in any fashion or found in any form whatsoever.

This exclusion also applies to any loss, cost, expense or damages, whether direct or consequential, arising out of any:

a) request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat, or neutralise lead or any other material or substance containing lead or in any way respond to, or assess the effects of lead, or

b) claim or suit relating to testing for, monitoring, cleaning up, removing, abating, containing, treating or neutralising lead or any other material substance containing lead or in any way responding to, or assessing the effects of lead.

**Page 5 of 8**

69

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## 9) EXTERIOR INSULATION and FINISH SYSTEMS (EIFS) EXCLUSION

We (Insurers) do not insure for loss or damage caused directly or indirectly by any installation, repair, maintenance or use of the following:

Exterior Insulation Finish System (EIFS), also known as Exterior Hybrid Stucco Cladding, Fake Stucco, Synthetic Stucco, or any other similar exterior coating, which results in damage including, but not limited to, fungi, seepage, rot, delamination, detachment, collapse, or imminent collapse, cracking, or insect damage.

Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

The language of this endorsement supersedes any conflicting wording within your policy.

## 10) SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100 Form approved by Lloyd's market Association

## 11) LIABILITY EXCLUSIONS

### i) Abuse Exclusion

It is agreed that this Insurance excludes liability arising out of or caused directly or indirectly by any actual or alleged sexual molestation, corporal punishment, physical or mental abuse, assault or battery or any act or omission in respect of the prevention or suppression of such sexual molestation, corporal punishment, physical or mental abuse, assault or battery.

### ii) Electromagnetic Fields Exclusion

It is agreed that this Insurance excludes direct or indirect loss or damage and liability arising out of or caused directly or indirectly by the actual or alleged exposure to electromagnetic fields, whether naturally occurring or man-made.

### iii) Radon Gas Exclusion

It is agreed that this Insurance excludes direct or indirect loss or damage and liability arising out of or caused directly or indirectly by the actual or alleged:
  i)   exposure to, inhalation, ingestion or existence of radon gas; or
  ii)  removal, encapsulation, abatement, or handling of radon gas.

**Page 6 of 8**

### iv) Swimming Pool Liability Exclusion

It is agreed that this Insurance excludes liability arising from the use or ownership of any swimming pool that does not comply with any Federal, State, local government or other governmental authority law or regulation.

### v) Employment Liability Exclusion

It is agreed that this Insurance excludes liability arising from a refusal or failure to employ, promote or fairly compensate any person, or from supervision or failure to supervise, coercion, reassignment, discipline, defamation, harassment, intimidation, creation of a hostile work environment, humiliation or discrimination of any person.

### vi) Employee Benefits and Workers Compensation Exclusion

It is agreed that this Insurance excludes liability arising from any act, error or omission in respect of the provision of employee benefits of any kind. It shall also exclude any liability **arising under any worker's compensation scheme, disability laws or statutes.**

### vii) Fines and Penalties Exclusion

This insurance shall not indemnify the Insured in respect of fines, penalties, punitive damages, exemplary or non compensatory damages, or any damages resulting from the multiplication of compensatory damages.

### viii) Dangerous Pets Exclusion

It is agreed that this Insurance excludes liability caused directly or indirectly by dangerous pets in the ownership or care, custody and control of the Assured including, but not limited to:
a) Pit Bull Terriers; b) Wolf-Dog Hybrids; c) Dogs bred to guard property; d) Farm and ranch herding dogs; e) Snakes; f) Alligators; g) Cats normally found in the wild or in zoos.

**Page 7 of 8**

## 12) LLOYD'S PRIVACY POLICY STATEMENT
### UNDERWRITERS AT LLOYD'S, LONDON

The Certain Underwriters at Lloyd's, London want you to know how we protect the confidentiality of your non-public personal information. We want you to know how and why we use and disclose the information that we have about you. The following describes our policies and practices for securing the privacy of our current and former customers.

### INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number
- Information about your transactions with our affiliates or other third-parties, such as balances and payment history
- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

### INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services. We may also disclose information when the law requires or permits us to do so.

### CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information. We have measures in place to secure our paper files and computer systems.

### RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION

**You have a right to request access to or correction of your personal information that is in our possession.**

### CONTACTING US

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance. We can provide a more detailed statement of our privacy practices upon request.

*LSW1135B*

All other provisions of this policy apply.

BSLHO 0033 0921     **Page 8 of 8**

Date Filed 11/26/2025 3:48 PM
Superior Court – Bristol
Docket Number

# EXHIBIT 2

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 2284CV2019

NEW ENGLAND PROPERTY SERVICES GROUP, LLC,

PLAINTIFF,

vs.

BUNKER HILL PREFERRED INSURANCE COMPANY,

DEFENDANT.

## MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, New England Property Services Group, LLC ("NEPSG"), filed this action against the defendant, Bunker Hill Preferred Insurance Company ("Bunker Hill"), alleging: violation of Chapter 93A (Count I); breach of contract (Count II); and tortious interference with advantageous business relations (Count III) and seeking declaratory relief pursuant to G.L. c. 231A, § 1 (Counts IV & V). The plaintiff filed a motion for partial summary judgment on Counts IV and V (Paper No. 6). The defendant opposes the motion and filed a cross-motion for summary judgment (Paper No. 8). A hearing on the motions took place on January 5, 2024. For the following reasons, the plaintiff's motion for partial summary judgment is **ALLOWED IN PART** and **DENIED IN PART**, and the defendant's motion for summary judgment is **ALLOWED IN PART** and **DENIED IN PART**.

### BACKGROUND

Bunker Hill issued a homeowner's insurance policy ("policy") to Eleni Lymberopoulos ("homeowner") and her now-deceased husband for their home at 36

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

Winona Street in Brockton ("property"). SOF ¶ 1-2.[1] The policy was effective from March 2, 2021 to March 2, 2022. *Id.* at ¶ 1. The property was damaged on July 6, 2021, when a motor vehicle crashed into it. *Id.* at ¶ 2. Shortly after, NEPSG notified Bunker Hill of the loss, and Bunker Hill opened a claim, number 3H2401960284 ("claim"). *Id.* at ¶ 3. It is undisputed that the claim occurred while the policy was in effect. *Id.* at ¶ 4.

On July 8, 2021, the homeowner and NEPSG executed a written irrevocable assignment of insurance claim benefits and rights contract ("assignment"). *Id.* at ¶ 5. Bunker Hill inspected the property on that day. *Id.* at ¶ 6.

NEPSG hired David Baker of Home Estimating Services to provide an estimate for the work required to repair the property. *Id.* at ¶ 7; JA Ex. 5. Baker estimated that the repair would cost $57,300.15. SOF ¶ 7. On August 10, 2021, NEPSG provided Bunker Hill with a scope-of-work and estimate of $139,883.55 to resolve the claim. *Id.* On August 16, 2021, Bunker Hill provided the homeowner and NEPSG with a copy of their estimate for the loss, which totaled $27,694.70. *Id.* at ¶ 8. On September 14, 2021, Bunker Hill issued a check in that amount to the homeowner before placing a stop-payment order on the check and reissuing it naming NEPSG as payee. *Id.* at ¶ 9. Thereafter, Bunker Hill issued two additional checks, bringing the total payment made by Bunker Hill on the claim to $57,695.44. *Id.* at ¶ 11.

On March 30, 2022, NEPSG emailed a demand for reference to Bunker Hill. *Id.* at ¶ 12. On April 28, 2022, Bunker Hill wrote to NEPSG asserting that NEPSG's claim for reference was invalid and/or otherwise inappropriate. *Id.* at ¶ 14. Bunker Hill maintains that it has no obligation to participate in a reference proceeding requested by NEPSG or acknowledge NEPSG's demand for reference in relation to the claim. *Id.* at ¶ 15.

---

[1] References to the Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment on Count IV and Count V of its Complaint and Defendant's Cross Motion for Summary Judgment (Paper No. 11) will be denoted by the abbreviation "SOF" followed by a paragraph citation. References to the Joint Appendix will be denoted by the abbreviation "JA" followed by an exhibit number.

2

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## DISCUSSION[2]

Summary judgment is appropriate if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56; *American Family Life Assurance Co. of Columbus* v. *Parker*, 488 Mass. 801, 804 (2022). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden by either submitting affirmative evidence that negates an essential element of the opposing party's case or demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. See *Flesner* v. *Technical Commc'ns Corp.*, 410 Mass. 805, 809 (1991); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). A court reviewing a motion for summary judgment must "draw all inferences in the light most favorable to the nonmoving party." *Drakopoulos* v. *U.S. Bank Nat'l Ass'n*, 465 Mass. 775, 777 (2013), quoting *Premier Capital, LLC* v. *KMZ, Inc.*, 464 Mass. 467, 474-475 (2013).

---

[2] As a preliminary matter, the Plaintiff has embedded in its Reply to Defendant's Consolidated Memorandum (Paper No. 10) a motion to strike the entirety of the Consolidated Memorandum of Law in Support of Bunker Hill Preferred Insurance Company's Opposition to Plaintiff's Motion for Partial Summary Judgment on Count IV and Count V of Its Complaint and Its Cross-Motion for Summary Judgment (Paper No. 9). The Plaintiff argues that the Consolidated Memorandum should be struck because it exceeds the twenty-page limit set forth in Mass. R. Sup. Ct. 9A and is in violation of Mass. R. Civ. P. 11. Pursuant to Rule 9A, Bunker Hill is entitled to file a twenty-page memorandum in opposition to the Plaintiff's motion for partial summary judgment and an additional twenty-page memorandum in support of its own motion for summary judgment – for a total of forty pages. Instead, Bunker Hill filed a single consolidated twenty-six-page memorandum. As twenty-six pages is less than forty pages, the Court does not agree with the Plaintiff that the Consolidated Memorandum violates Rule 9A's twenty-page limit on memorandums. The Plaintiff further contends that the Consolidated Memorandum violates Mass. R. Civ. P. 11 because Bunker Hill categorized the Plaintiff's business practices as "fraudulent, predatory, and unlawful." The Court does not agree that such statements violate Mass. R. Civ. P. 11. Therefore, the motion to strike is denied.

3

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

## I.    Declaratory Relief

Pursuant to G.L. c. 231A, § 1, the Superior Court "may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby . . . in any case in which an actual controversy has arisen and is specifically set forth in the pleadings." "An 'actual controversy' is presented if there exists 'a "real dispute" caused by the assertion by one party of a duty, right, or other legal relation in which he has a "definite interest," in circumstances indicating that a failure to resolve the conflict will almost inevitably lead to litigation.'" *St. George Greek Orthodox Cathedral of W. Mass., Inc.* v. *Fire Dep't of Springfield*, 462 Mass. 120, 124 (2012), quoting *Entergy Nuclear Generation Co.* v. *Department of Envtl. Prot.*, 459 Mass. 319, 325 (2011), quoting *District Attorney for the Suffolk Dist.* v. *Watson*, 381 Mass. 648, 659 (1980).

### a.  Matching

NEPSG seeks a declaration that the policy is a matching policy requiring replacement of all the vinyl siding on the property if matching materials cannot be found. Bunker Hill contends that the policy does not require matching and that it is only obligated to pay to repair the section of the property that has been damaged. The relevant portion of the policy provides:

> We will pay replacement cost if the damaged building is repaired or replaced by you on the "residence premises" or some other location within the Commonwealth of Massachusetts within a reasonable time but not more than two years from the date of loss.

> We will pay no more than the smallest of the following amounts:

> a. The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

> b. The necessary amount actually spent to repair or replace the damaged building; or

> c. The limit of liability under this policy that applies to the building, increased in accordance with Paragraphs B.1. and B.2. of this endorsement.

4

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

JA Ex. 1a – Additional Limits of Liability for Coverages A, B, C and D – Massachusetts §
B(4)(2). In this case, option (a) is applicable because the homeowner intends to replace
the damaged vinyl siding with material "of like kind and quality and for like use."

An insurance policy is a contract. *Commerce Ins. Co., Inc.* v. *Gentile*, 472 Mass. 1012,
1013 (2015). The interpretation of a contract is a question of law. *James B. Nutter & Co.* v.
*Estate of Murphy*, 478 Mass. 664, 667 (2018). "Contractual language is ambiguous 'if it is
susceptible of more than one meaning and reasonably intelligent persons would differ as
to which meaning is the proper one.'" *Id.* at 669, citing *Citation Ins. Co.* v. *Gomez*, 426 Mass.
379, 381 (1998). "When the [contract] language is ambiguous, it is construed against the
drafter, 'if the circumstances surrounding its use ... do not indicate the intended meaning
of the language.'" *Id.*, quoting *Merrimack Valley Nat'l Bank* v. *Baird*, 372 Mass. 721, 724
(1977). The phrase "of like kind and quality and for like use" is not defined in the policy.
As the parties' arguments show, the phrase is susceptible to more than one meaning.
Therefore, the phrase is ambiguous.

A reasonable interpretation of the phrase is that it requires matching. If there are
no "materials of like kind and quality" available to repair the damage to an insured's
property, the only way an insurer could fulfill its obligation to repair the damage with
materials of like kind and quality is to replace both the damaged and undamaged
portions of the insured's property. Thus, the policy at issue is a matching policy, and the
plaintiff is entitled to the replacement of all the vinyl siding at the property if siding of
like kind and quality as the existing, undamaged siding cannot be found. Summary
judgment shall, therefore, enter in favor of the plaintiff as to this portion of Count IV.

NEPSG seeks a further declaration that matching materials cannot be found as to
the vinyl siding at the property and, therefore, per the policy, Bunker Hill must cover the
cost to replace all the vinyl siding. Unlike interpretation of the policy, this is not a
question of law but a question of fact that cannot be resolved by the court on summary
judgment. See *Alessi* v. *Mid-Century Ins. Co.*, 464 S.W.3d 529, 533 (E.D. Mo. App. 2015)
("Under the facts before this Court following the trial court's entry of summary judgment,
we cannot answer the question[ ] of whether the replacement siding is virtually identical

5

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

. . . . [This is a] question[ ] of fact for a jury to decide."); *Collins* v. *Allstate Ins. Co.*, 2009 WL 4729901 at *1, 5-6 (E.D. Pa. 2009) (where insurance policy calls for reimbursing insured for repair costs of "equivalent construction for similar use" and plaintiff claims replacement materials are not equivalent, issue is one of material fact, precluding summary judgment). Because this is a genuine issue of material fact that must be resolved by a factfinder, neither party is entitled to summary judgment as to this portion of Count IV.

### b. Right to Reference

NEPSG also seeks a declaration that it has the authority to demand reference pursuant to the policy and/or Massachusetts insurance law and that it is entitled to go through the reference process regarding the claim. Bunker Hill contends that NEPSG is not entitled to reference because the named insured may not assign the policy to another without Bunker Hill's written consent, and only the named insured is entitled to reference.

NEPSG and the homeowner executed the assignment. That document states, in pertinent part:

> IN WITNESS WHERE OF, the undersigned(s) have caused this transfer and irrevocable assignment of the claim officially reported and referenced by **Claim Number and/or 3rd Party File Number: 3H2401960824** and/or applicable **Client's Insurance Policy Number and/or 3rd Party Policy Number: MAH00002009916** covering insurable property at **36 Winona Street Brockton, MA 02301** to be duly executed this **8th** day of **July, 2021**.

(emphasis in original). The assignment clearly evinces an intent on the part of the homeowner and NEPSG to assign the claim, not the entirety of the policy. The claim is specifically referenced by number in the assignment. The inclusion of the "and/or" language included after the claim number does not transform the assignment into an assignment of the entire policy. As the homeowner did not need Bunker Hill's consent to assign the claim, the assignment is valid.

"When a claim is assigned, the assignee stands in the shoes of the assignor and is in the same position as the assignor would have been in without the assignment."

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

*Rubenstein* v. *Royal Ins. Co.*, 45 Mass. App. Ct. 244, 246 (1998). The policy provides, in relevant part:

### F. Arbitration

If you and we fail to agree on the amount of loss, we shall, upon receipt of your written request to do so, refer this matter to a three[-] member board of referees. They are selected and must act according to the procedures set by the law. Their decision will be binding. This board does not make decisions about matters of coverage or fault.

The homeowner clearly has the right to demand reference in connection with the claim, given the dispute over the amount of loss. As a proper assignee of the claim, NEPSG, therefore, has the right to demand reference.[3]

## II.    Violations of Chapters 93A & 176D

General Laws c. 176D, § 3(9), prohibits deceptive acts by insurance companies. Those who claim they were injured by an insurance company's unfair acts may also bring an action under G.L. c. 93A. See *Bolden* v. *O'Connor Café of Worcester, Inc.*, 50 Mass. App. Ct. 56, 59 n.8 (2000). NEPSG alleges that Bunker Hill violated G.L. c. 176D, § 3(9)(a), which prohibits "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; G.L. c. 176D, § 3(9)(b), which prohibits "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies"; G.L. c. 176D, § 3(9)(c), which prohibits "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies"; G.L. c. 176D, § 3(9)(f), which prohibits "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; and G.L. c. 176D, § 3(9)(g), which prohibits "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." "To proceed against

---

[3] The finding that NEPSG is a proper assignee of the claim and had the right to demand reference defeats Bunker Hill's argument that NEPSG acted as an unlicensed private insurance adjuster throughout this process, as NEPSG, standing in the shoes of the homeowner (see *supra*) is entitled to represent itself.

7

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

an insurer who has violated G.L. c. 176D, § 3(9), a plaintiff must bring a claim under G.L. c. 93A, § 9 or § 11." *Silva* v. *Steadfast Ins. Co.*, 87 Mass. App. Ct. 800, 803 (2015). NEPSG brought its claim under Section 11.[4]

"A ruling that conduct violates G.L. c. 93A is a legal, not a factual, determination." *Casavant* v. *Norwegian Cruise Line, Ltd.*, 460 Mass. 500, 503 (2011), quoting *R.W. Granger & Sons* v. *J & S Insulation, Inc.*, 435 Mass. 66, 73 (2001). Accord *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 414 (1991) ("Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a c. 93A violation is a question of law . . . ."). The court can, therefore, properly address the c. 93A and c. 176D claims on summary judgment.

"An absence of good faith and the presence of extortionate tactics generally characterize the basis for a c. 93A – 176D action based on unfair settlement practices." *Guity* v. *Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 344 (1994). In determining whether a business practice is unfair, the court considers factors such as "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous, [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *PMP Assoc., Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). "A plausible, reasoned legal position that may ultimately turn out to be mistaken . . . is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D." *Guity*, 36 Mass. App. Ct. at 343.

Standing alone, a breach of contract is not a c. 93A violation. *Madan* v. *Royal Indem. Co.*, 26 Mass. App. Ct. 756, 762 (1989). A breach of contract violates c. 93A only if "the nature, purpose, and effect of the challenged conduct is coercive or extortionate in nature." *Diamond Crystal Brands, Inc.* v. *Blackleaf, LLC*, 60 Mass. App. Ct. 502, 507 (2004).

---

[4] The Complaint purports to assert the claim pursuant to G.L. c. 93A, § 2. However, since the claim must be brought under Section 9 or 11, the court considers the claim to have been brought pursuant to Section 11, which provides a right of action in a business context.

8

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

"Ordinary contract disputes, or the failure to negotiate a settlement in lieu of litigation ... typically fall outside the reach of the statute." *Aggregate Indus. – Ne. Region, Inc.* v. *Hugo Key & Sons, Inc.*, 90 Mass. App. Ct. 146, 152 (2016). See *Duclersaint* v. *Federal Nat'l Mortg. Ass'n*, 427 Mass. 809, 814 (1998) ("[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made"); *Kobayashi* v. *Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 505 (1997) (ordinary contract disputes "without conduct that was unethical, immoral, [or] oppressive," are not actionable under c. 93A).

The dispute in this case arose after NEPSG and Bunker Hill reached differing conclusions about the cost to repair the property.[5] At that point, as the assignee of the claim, NEPSG asserted a right to reference under the policy. Disagreeing that NEPSG, as assignee, could assert a right to reference under the policy, Bunker Hill denied the request. Whether the assignee of a claim possesses a right to reference under the insured's policy appears to present a novel question under Massachusetts law. The parties disagreed as to that issue, although neither's interpretation is patently unreasonable. Consequently, this dispute amounts to an ordinary contract dispute in which NEPSG asserts that Bunker Hill breached the policy by failing to engage in reference. There is no evidence that Bunker Hill engaged in any unethical or oppressive actions that would properly give rise to claims under c. 93A and/or c. 176D. Consequently, summary judgment must enter for Bunker Hill on this claim.

---

[5] In a September 20, 2021, email, Richard Tilden, a representative at one time assigned to the claim, noted that the difference in the estimates is almost entirely attributable to NEPSG's assertion that it will take 480 hours to replace the siding at the property, as opposed to Bunker Hill's estimated 128 hours, and 204 hours for hazardous waste removal. Ex. 3 to the Complaint. The hours for the two tasks account for $96,116.20 of NEPSG's $139,883.55 estimate. *Id.* As to the 480 hours relative to the siding, NEPSG asserts that it will take four workers six days to remove the existing siding on the property and nine days to put up new siding. JA Ex. 8. It is the court's view that the suggestion it would take fourteen (14) days – nearly three full work weeks – to take down and replace the siding is dubious. A more realistic estimate as to the time required to complete said tasks would likely bring the parties' estimates much closer together.

9

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

### III.    Tortious Interference with Advantageous Business Relations

To prevail on a claim of tortious interference with advantageous business relations, the plaintiff must prove: (1) it had an advantageous relationship with a third party; (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. *Blackstone* v. *Cashman*, 448 Mass. 255, 260 (2007). NEPSG asserts that Bunker Hill tortiously interfered with its relationship with the homeowner by contacting her directly. The record, however, contains no evidence that NEPSG's relationship with the homeowner was damaged. Further, Bunker Hill believed, correctly, that it was communicating with its insured. The homeowner remained the insured on the policy even after assigning the claim to NEPSG. Consequently, it cannot be said that Bunker Hill had improper motive or means in contacting the homeowner. Further, there is no evidence that NEPSG suffered harm resulting from Bunker Hill's communication with the homeowner. As NEPSG cannot prove all elements of the claim of tortious interference with advantageous business relations, summary judgment must enter for Bunker Hill on that claim.

### IV.    Breach of Contract

To prevail on a claim for breach of contract, NEPSG must demonstrate that: there was an agreement between it and Bunker Hill; the agreement was supported by consideration; NEPSG was ready, willing, and able to perform its part of the contract; Bunker Hill committed a breach of the contract; and NEPSG suffered harm as a result. *Bulwer* v. *Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016). As noted, *supra*, "[w]hen a claim is assigned, the assignee stands in the shoes of the assignor and is in the same position as the assignor would have been in without the assignment." *Rubenstein*, 45 Mass. App. Ct. at 246. Therefore, because the policy was a contract between Bunker Hill and the homeowner, a contract exists between Bunker Hill and NEPSG, as assignee of the homeowner, as it relates to the claim. The policy dictates that NEPSG can request reference to resolve the dispute surrounding the amount of the claim. Bunker Hill refused

10

Date Filed 11/26/2025 3:48 PM
Superior Court - Bristol
Docket Number

NEPSG's request for reference, thereby breaching the contract. At this point, however, it is unclear whether NEPSG suffered any harm from Bunker Hill's refusal to proceed to reference. The issue of harm, therefore, remains an unresolved issue of material fact, rendering summary judgment on this count inappropriate.

### CONCLUSION & ORDER

For the foregoing reasons:

1. NEPSG's Motion for Partial Summary Judgment is **ALLOWED** as to that portion of Count IV which seeks a determination that the Policy is a matching policy and Count V. The court hereby declares and adjudges that the Policy provides matching coverage and that NEPSG is entitled, as the homeowner's assignee, to demand reference pursuant to the policy.

2. NEPSG's Motion for Partial Summary Judgment is **DENIED** as to that portion of Count IV which seeks a determination that materials of like kind and quality are not available and Bunker Hill must replace the vinyl siding on the entire property.

3. Bunker Hill's Motion for Summary Judgment is **ALLOWED** as to Count I, alleging violation of c. 93A, and Count III, alleging tortious interference with advantageous business relations.

4. Bunker Hill's Motion for Summary Judgment is **DENIED** as to Count II, alleging breach of contract.

/s/ *David A. Deakin*
David A. Deakin
Associate Justice

Dated: April 22, 2024

11